## 72033. WHITTON v. THE STATE.
(344 SE2d 703)

BIRDSONG, Presiding Judge.

The defendant, Bobby Whitton, appeals his conviction of the offenses of arson in the second degree and arson in the third degree. The state indicted Wayne Carden, William "Buddy" Harper, and the defendant, on two counts of arson arising from the burning of Gable's Sporting Goods Store in Douglasville, Georgia, on January 4, 1972. Terry Carden (Terry) stated that he was an orderly at the Bremen General Hospital in which Bobby Whitton was a patient on January 3, 1972. His sister, Eloise, picked him up at his cousin's mobile home and took him and his cousin, Wayne Carden (Wayne), to see Whitton in the hospital. Terry testified that Wayne attempted to borrow $200 from Whitton to buy marijuana but was refused. However, Whitton did say "the closest competition he had was Gable's over in Douglasville . . . that he'd give two hundred dollars to see Gable's go out of business. . . . And Wayne said, We can arrange that. . . . And Bobby said that he wasn't interested in nothing [sic] like that; that he didn't want nothing [sic] to do with that. . . ." Then Eloise took him and Wayne back to Wayne's mobile home.

Wayne Carden stated he had borrowed $75 from Bobby Whitton to buy "dope" but what he bought was "cocoa." He borrowed another $125 and added $30 of his own money to buy one pound of marijuana. He was arrested for speeding and drinking and the marijuana confiscated. He owed Whitton $200. When he and Terry went to see Whitton he was not attempting to borrow $200, but when Terry left the room "Bobby said that he had a place that he sure would like to burn down . . . I asked him where it was, what it was. Q. What did he tell you? A. Told me Gable Sporting Goods Store." "He just said that Mr. Gable was trying to mess him up some way." Whitton operated the Four Seasons Sporting Goods store in Bremen and Gable had sold Whitton his stock in sporting goods on a consignment basis and Gable was to inventory Whitton's store and Whitton was to pay Gable 70% of his sales. The upcoming inventory was to establish how much Whitton owed Gable.

Wayne Carden said that after Eloise Carden took him home, he went back to the hospital to see Whitton. "I just told him that I would do the job for him. . . . He said okay. Q. Now, what were you to get? A. I was just to break even with him where I could get out of it. . . . The $200.00 I owed him, I wouldn't owe it to him no [sic] more." After reaching this agreement, Wayne returned home and

Whitton called him at his home and told him the staircase on the rear of Gable's store was where he should pour gas under the door and light a match. Wayne had not been to Gable's but once and had never been to the rear of the store. He did not know Gable and had no reason to burn Gable's store except for his agreement with Whitton.

William "Buddy" Harper stated that he and Wayne Carden worked for his father in the plumbing business. They played pool, drank beer, and smoked marijuana together. He owed Wayne around $30 from bets he lost while playing pool with him. On the evening of January 3, 1972, Wayne picked him up. "Wayne said that we were going to burn Gable Sporting Goods Store for Bobby Whitton, and then I asked him why for Bobby Whitton . . . Wayne said he owed Bobby a bunch of money; two-hundred-and-something dollars, I think. And then I said, Well, what are you going to get out of this? And he said, Two hundred dollars worth." Harper was to have his debt to Wayne of $30 cancelled for assisting Wayne in the burning of Gable's store.

Harper and Wayne stopped on the way from Bremen to Douglasville and purchased a gallon of gasoline in a plastic jug. They drank a few beers, smoked marijuana, and played some pool. Around 1:00 a.m. on the morning of January 4, 1972, they drove to Gable's Sporting Goods Store. Wayne told Harper to stay in the car and wait for him under a street light. Wayne took the gallon jug of gas and went to the rear of Gable's store, poured the gasoline under the rear door and down the back stairs. When he lit a match the gasoline exploded and the fire alarm went off. He ran to the front of the building and could not find Harper or his car. He ran through the woods and discarded the gasoline jug. While walking along the highway he was apprehended by the police. Harper abandoned Wayne's car and started walking. He also was apprehended by the police. Wayne spoke to the fire chief and led him to the place where he had discarded the plastic jug.

Whitton testified that Gable would stock his store at 10 percent above wholesale price but then changed it to 70 percent of his gross receipts and they were supposed to have conducted an inventory but there was a delay in him moving to a new building and the inventory was delayed. He denied that he had ever made any arrangement with Wayne Carden on the purchase of "dope." He had loaned him some money in November of 1971, $75. He admitted that Wayne Carden visited him in his hospital room and asked for a job. Whitton said he did not need help at that time. Wayne asked Whitton if he had any competition in Bremen and he told him no that his only competition was in Douglasville and "I'd liked [sic] to see them retire and go out of business; and that's all that was said." He said that Wayne tried to borrow $200 to buy "a pound of grass. . . ." He refused. Whitton also

said that Wayne had visited him after he was indicted and said that if he would give him enough money, he would go to Puerto Rico. He refused.

The last week in December of 1971, Gable informed Whitton they would inventory Whitton the following week. They inventoried Whitton on January 4, 1972, the day of the fire. That inventory showed a worth of $12,065.14. Gable had provided Whitton $30,550.46 in merchandise. Whitton's partner in the sporting goods store signed a promissory note for the amount due Gable and has made several $25 payments, which does not pay the interest due on the unpaid $18,485.

Whitton was convicted on October 3, 1972. On October 5, 1972, defendant timely filed a motion for new trial. The hearing date was left blank. No further action was taken until September 4, 1984, when the state filed a motion to dismiss. An amended motion for new trial was filed on September 28, 1984, and following a hearing, the motion for new trial was dismissed. Appeal followed to this court. In *Whitton v. State*, 174 Ga. App. 634 (331 SE2d 10), we held that where the time of a hearing is left blank, as in this case, the time is "indefinite." The defendant had no duty to file a transcript until his motion for new trial was disposed of and the trial court erred in dismissing his motion. We remanded the case for a ruling on the motion. The trial court denied the motion for new trial and defendant brings this appeal. *Held:*

1. Defendant contends "[t]here was insufficient corroboration of the testimony of the alleged accomplice, Wayne Carden," but divides the enumeration into two separate allegations. The first allegation complains that the testimony of Buddy Harper "concerning statements allegedly made by Wayne Carden, implicating the defendant in the conspiracy . . . was [sic] inadmissible hearsay because the state had failed to make out prima facie case of conspiracy." The second allegation avers that it was error for the court to permit the jury to consider Harper's testimony "in determining whether Wayne Carden's testimony had been sufficiently corroborated, because Harper's only knowledge of the defendant's alleged involvement was based on prior out-of-court statements made by Wayne Carden."

Appellate counsel has confused the issue of sufficiency of the evidence of conspiracy with admissibility of evidence of the co-conspirators. Each of these questions must be considered separately. *Birt v. State*, 236 Ga. 815, 824 (225 SE2d 248). Two statutes are involved. Under OCGA § 24-3-5, "*[a]fter the fact of conspiracy is proved*, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all." (Emphasis supplied.) The second statute is OCGA § 24-4-8, which states that generally the testimony of a single witness is sufficient to establish a fact,

except that in felony cases where "the only witness is an accomplice, the testimony of a single witness is not sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness. . . ."

Our Supreme Court has held that "[i]t is not required that this corroboration shall of itself be sufficient to warrant a verdict, or that the testimony of the accomplice be corroborated in every material particular. [Cits.] Slight evidence from an extraneous source identifying the accused as a participator in the criminal act will support a verdict. [Cits.] The sufficiency of the corroboration . . . is peculiarly a matter for the jury to determine. If the verdict is founded on slight evidence of corroboration *connecting* the defendant with the crime, it can not be said, as a matter of law, that the verdict is contrary to the evidence." *Caldwell v. State*, 227 Ga. 703, 706 (182 SE2d 789); see also *Meeker v. State*, 249 Ga. 780, 781 (294 SE2d 479).

There were three witnesses for the state involved in this issue. Terry Carden was a witness to the meeting between Whitton and Wayne Carden. He was not a conspirator. Wayne Carden testified at the trial he was a conspirator. This is direct evidence of the existence of the conspiracy. Buddy Harper was also a conspirator, although there is no evidence that Whitton was aware of his participation. After the fact of the conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project is admissible against all the conspirators. *Birt*, supra at 822. Hence, the first order of proof is a prima facie conspiracy. A conspiracy consists in a corrupt agreement between two or more people to an unlawful act. *Kennemore v. State*, 222 Ga. 362, 363 (149 SE2d 791). "The existence of a conspiracy 'may be established by direct proof, or by inference, as a deduction from acts and conduct, which discloses a common design on their part to act together for the accomplishment of the unlawful purpose. In other words, the existence of the common design or purpose between two or more persons to commit an unlawful act may be shown by either direct or circumstantial evidence.'" *Park v. State*, 224 Ga. 467, 474 (162 SE2d 359), U. S. cert. den. 393 U. S. 980. Our code, OCGA § 24-3-5, "does not render all testimony by a conspirator inadmissible until the fact of the conspiracy [is] proved by independent evidence. It does not render a conspirator incompetent to testify as to facts; it simply prohibits a conspirator from testifying as to declarations made by one conspirator outside the presence of, and upon the trial of, another conspirator. 'The testimony of a coconspirator as to facts within his knowledge involves no hearsay problem, since the statements are given on the stand and are open to cross examination.'" *Birt*, supra at 822. Here, Wayne Carden's testimony at trial established a prima facie conspiracy. The testimony of Terry Carden, who was not a conspirator, but a witness to a meeting and conversa-

tion between Whitton and Wayne Carden was admissible in corroboration of the testimony of a conspirator, Wayne Carden, under OCGA § 24-4-8. This testimony identified Whitton as discussing putting Gable's Sporting Goods Store out of business with the person who burned the store later that same night, although Whitton at that time indicated he "didn't want nothing [sic] to do with that. . . ." The prima facie establishment of conspiracy permitted the declarations of all conspirators during the pendency of the conspiracy. Thus, the declarations of Wayne Carden to Buddy Harper during the pendency of the conspiracy were admissible. The trial court did not err in admitting the testimony of Harper implicating the defendant.

Next, we turn to the sufficiency of the corroborating evidence of the in-court testimony of the conspirator Carden. First, there was the testimony of a witness to a conversation between the defendant and the person who admitted that he burned Gable's store, in which putting Gable's store "out of business" was discussed. Secondly, there was no motive for Carden to burn Gable's store shown by any of the evidence. It was shown that Whitton stocked his store by merchandise received from Gable's. Gable testified that his accounts receivable files were stored in the office in the back of his store. Carden said Whitton advised him to pour gasoline under the rear door. The files were saved and they showed Whitton and his partner had received over $30,000 worth of merchandise from Gable. An inventory of Whitton's store showed only $12,000 worth of merchandise on hand. Carden testified that Whitton told him "Mr. Gable was trying to mess him up some way." The defendant stood to gain from the destruction of Gable's accounts receivable files if there was no proof of delivery and receipt of $30,000 in merchandise to Whitton.

"It is not required that this corroboration shall of itself be sufficient to warrant a verdict, or that the testimony of the accomplice be corroborated in every material particular. [Cit.] Slight evidence from an extraneous source identifying the accused as a participator in the criminal act will be sufficient corroboration of the accomplice to support a verdict. [Cit.] The sufficiency of the corroboration of the testimony of the accomplice to produce conviction of the defendant's guilt is peculiarly a matter for the jury to determine. If the verdict is founded on slight evidence or corroboration connecting the defendant with the crime, it can not be said, as a matter of law, that the verdict is contrary to the evidence." *Birt*, supra at 826. This enumeration is without merit.

2. When viewed in a light favorable to the verdict, the evidence admitted at trial is sufficient to enable any rational trier of fact to find the existence of the offenses charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560); *Stinson v. State*, 244 Ga. 219 (4) (259 SE2d 471).

3. Defendant alleges the trial court "did not correctly charge the jury regarding the propriety of their consideration of the testimony of Harper" involving statements made to him by Wayne Carden implicating the defendant in the crimes charged. He argues that the court erred "in failing to charge the jury that it could not consider the otherwise hearsay testimony of Harper" implicating the defendant "until the jury had determined beyond a reasonable doubt by *aliunde* evidence that the defendant was involved in the conspiracy. . . ." This enumeration is answered by the First Division, supra. That is, the code first requires evidence of the conspiracy and then declarations of the conspirators are admissible against all. *Birt,* supra at 822. Wayne Carden testified at trial that there was a conspiracy between himself and Whitton. Terry Carden's testimony was corroborative to the extent that it showed Whitton and Wayne Carden discussed putting Gable out of business on the night of the fire. This established a prima facie conspiracy which then made admissible all declarations of the conspirators pending the conspiracy. Hence, Harper's testimony as to Carden's declarations during the pendency of the conspiracy was admissible. The court did not err in its charge that it was for the jury to determine if there was a conspiracy, and, if so, whether the defendant was a party to such conspiracy. Defendant cites us to "the landmark Georgia Supreme Court case of *Whortham v. State,* 184 Ga. 674. . . ." "The" landmark case on admissibility of declarations of conspirators is *Birt v. State,* 236 Ga. 815, supra. This case clarified the former confusion of language in prior decisions between admissibility and corroboration of out-of-court declarations of conspirators, vis-a-vis establishment of a prima facie conspiracy, admissibility of out-of-court declarations of conspirators, and sufficiency of corroboration of the in-court testimony of a conspirator.

*Judgment affirmed. Banke, C. J., and Sognier, J., concur.*

DECIDED APRIL 9, 1986 —
REHEARING DENIED APRIL 30, 1986 —

*Thomas B. Murphy, Stephen E. Garner,* for appellant.
*Frank C. Winn, District Attorney,* for appellee.