A95A1388. CROMWELL v. THE STATE.
(462 SE2d 388)

Smith, Judge.

Leroy Cromwell, Jr. and three other persons were charged with the offense of arson in the first degree in connection with the burning of Cromwell's car. Cromwell's co-defendants pled guilty; a jury found Cromwell guilty as charged. He appeals from his conviction and sentence following the denial of his motion for new trial.

1. Cromwell contends the trial court erred in allowing the prosecutor to question him regarding his silence after arrest. We agree and reverse.

Cromwell testified in his own defense, insisting he knew nothing about the plot to burn his car. To further this defense, his attorney questioned him regarding his cooperation during the initial investigation. Cromwell testified that during an interview with Douglas County investigators at his workplace he "answered every question they wanted to know" and did not refuse to answer any questions. He further testified that on the day after that interview, he gave investigators permission to search a storage area he rented and fully cooperated with them during the search.

Following Cromwell's direct testimony and outside the presence of the jury, the prosecutor argued that Cromwell's testimony on direct examination had "opened the door" to questioning Cromwell about the fact that after his arrest he had refused to answer questions and had invoked his right to remain silent. The trial court agreed, ruling that this line of questioning was permissible because Cromwell had testified on direct examination that his cooperation was complete. Pursuant to that ruling, Cromwell was asked during cross-examination whether he considered it "cooperation" when, after he was arrested, he had invoked his right to counsel and refused to answer questions.

The trial court's ruling was error. First, the court's characterization of Cromwell's testimony on direct examination was incorrect. Defense counsel confined his questions to specific incidents of cooperation that took place during the investigation and prior to the arrest.

The limited focus of the questioning on direct examination is demonstrated by the following colloquy: "Q: Did — were you cooperative *up until the point where you got arrested?* A: Yes, sir. Completely. Q: Up — *that was up until the arrest. Is that correct?* A: Exactly." (Emphasis supplied.) Consequently, evidence that Cromwell chose to remain silent after he was arrested did not contradict or impeach his testimony on direct examination that he had been completely cooperative before the arrest.

Second, and more importantly, even if the direct examination were not limited in scope, the questioning was improper. Although the United States Supreme Court has found no federal constitutional prohibition against cross-examining defendants for impeachment purposes regarding their silence after arrest absent *Miranda* warnings, the possibility was left open for state courts to prohibit such questioning. *Fletcher v. Weir*, 455 U. S. 603, 607 (102 SC 1309, 71 LE2d 490) (1982). In *Mallory v. State*, 261 Ga. 625, 629-630 (5) (409 SE2d 839) (1991), the Georgia Supreme Court held unequivocally that Georgia law prohibits such questioning: "[I]n criminal cases, a comment upon a defendant's silence or failure to come forward is far more prejudicial than probative . . . [and] will not be allowed even where the defendant has not received *Miranda* warnings and where he takes the stand in his own defense."

The trial court erred in permitting the questioning on this subject. Given the evidence in this case, we cannot say beyond a reasonable doubt that this error did not contribute to the jury's verdict; it was therefore not harmless error. *Vaughn v. State*, 248 Ga. 127 (281 SE2d 594) (1981). A new trial is required.

2. Because they involve issues of admissibility of evidence that may recur upon retrial, we address Cromwell's remaining enumerations of error.

Cromwell argues that the trial court erroneously admitted into evidence the tape recording of a conversation between two of his co-defendants. One co-defendant had been arrested when the tape was made. He admitted his complicity in the crime and agreed, at the instance of the authorities, to call another of the co-defendants from the sheriff's office and discuss the scheme. Their conversation was recorded. It was admitted into evidence over Cromwell's objection that it was hearsay and that it improperly bolstered a witness with an out-of-court declaration not under oath.

No improper bolstering took place. The participants in the conversation were present in court and subject to cross-examination. The concerns of the rule against hearsay were satisfied, and the recording was therefore admissible as a prior consistent statement under *Cuzzort v. State*, 254 Ga. 745 (334 SE2d 661) (1985). See *Carroll v. State*, 261 Ga. 553, 554 (1) (408 SE2d 412) (1991).

OCGA § 24-3-5 also provides an exception to the rule against hearsay: "After the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all." A prima facie case of the conspiracy to burn Cromwell's car had been made at the time the tape recording was introduced. *Jones v. State*, 265 Ga. 84, 85 (2) (453 SE2d 716) (1995). Cromwell argues, citing *Crowder v. State*, 237 Ga. 141 (227 SE2d 230) (1976), that the conspiracy ended when the first co-conspirator was arrested.

"The rule is that a conspiracy does not necessarily end simply because one or more of the conspirators have been arrested. So long as the conspiracy to conceal the fact that a crime has been committed or the identity of the perpetrators of the offense continues, the parties to such conspiracy are to be considered so much a unit that the declarations of either are admissible against the other." (Citations and punctuation omitted.) *Chews v. State*, 187 Ga. App. 600, 603-604 (2) (371 SE2d 124) (1988). See also *Jones*, supra. In this case, it is evident from the substance of the recorded conversation that at least one of the co-conspirators was intent on concealing the crime, the identity of the co-conspirators, and their involvement; the concealment phase of the conspiracy was ongoing. The recording was properly admitted into evidence.

3. Cromwell also argues that a tape recorded interview with the minor daughter of one of the co-defendants was improperly admitted into evidence and played for the jury. Cromwell maintains that the prejudicial nature of comments by the interviewing investigator outweighed any probative value of the tape.

Defense counsel had not heard the tape until it was played for the jury, and he objected to its introduction. In cross-examining the witness, defense counsel sought to undermine her veracity by eliciting the information that she had given the recorded statement and could be prosecuted for arson if she lied on the witness stand. The tape had not previously been played during the trial; it was admitted into evidence over objection after this cross-examination, under the authority of *Cuzzort*, supra, to show that the witness's prior statement was consistent with her trial testimony. One brief portion of the tape contains comments by the investigator to the witness, pointing out the serious nature of the crime of arson and indicating that firefighters risked their lives when the car burned and could have been hurt. In addition, the investigator blamed crimes such as this for the general public's rising insurance rates. At the close of the redirect examination of the witness, defense counsel moved for a mistrial based on the inflammatory and prejudicial nature of the comments on the tape. The motion was denied. No curative or limiting instruction was requested.

Citing *Ailstock v. State*, 159 Ga. App. 482, 486-488 (283 SE2d

698) (1981), Cromwell argues that the comments were irrelevant, and because all the jurors were car owners, were so prejudicial as to unduly influence the jury's consideration of his guilt or innocence. *Ailstock* is distinguished factually from this case, however, because it dealt with evidence that impermissibly placed a defendant's character in issue and not with irrelevant and prejudicial comments.

The decision whether to admit evidence challenged on the basis that its prejudicial nature outweighs its probative value is within the discretion of the trial court. *Carroll*, supra at 554 (2). The trial court's decision in this case was made after the fact, in the context of a motion for mistrial after the tape was previously, and properly, ruled admissible. Given that context, and the fact that the defense cross-examination of the witness mentioned the tape and legitimated its admission into evidence, we find no abuse of discretion in the trial court's denying the motion for mistrial. It is well established that a party may not complain of matters caused by his own conduct. See *State v. Griffin*, 204 Ga. App. 459, 460 (1) (419 SE2d 528) (1992).

*Judgment reversed. Birdsong, P. J., and Johnson, J., concur.*

DECIDED AUGUST 23, 1995 —
RECONSIDERATION DENIED SEPTEMBER 12, 1995 —

*Ray B. Gary, Jr., J. Michael Treadaway*, for appellant.

*David McDade, District Attorney, James E. Barker, Assistant District Attorney*, for appellee.