### A97A0207. SLAUGHTER v. THE STATE.
(490 SE2d 399)

ANDREWS, Chief Judge.

Douglas Slaughter appeals from his conviction of one count of arson in the first degree and one count of arson in the second degree. The conviction of one of his co-defendants, Helton, was affirmed in *Helton v. State*, 219 Ga. App. 826 (466 SE2d 690) (1996).

1. Slaughter first contends that the evidence was legally insufficient. "On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the [defendant] no longer enjoys the presumption of innocence; moreover[,] an appellate court does not [weigh] the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) [(1979)]. *Howard v. State*, 261 Ga. 251, 252 (403 SE2d 204) [(1991)]; *King v. State*, 213 Ga. App. 268, 269 (444 SE2d 381) [(1994)]." *Dolphus v. State*, 218 Ga. App. 565 (462 SE2d 453) (1995).

So viewed and as reflected in *Helton*, supra, Helton and Powell, who pled guilty and testified against Slaughter and Helton, set fire to

a house rented by Virginia Hill around 1:00 a.m. on September 10, 1994. Hill's car, which was parked outside the residence, also was set afire. Shortly prior to the time of the fire, Helton and Powell had been taken to a gas station where they bought gasoline and were then dropped off several blocks from the Hill residence with the plastic jug of gas.

A week prior to the fire, Slaughter had an altercation with Hill's son Kelvin, in which Slaughter had been beaten up. Hill testified that three days prior to the fire, Slaughter, accompanied by Jones, who had witnessed the earlier fight, approached her in her class at Thomas Homes School and told her she "needed to tell them to let it go," and to "just tell them." When she asked who "they" were, Jones told Slaughter "man, you need to go talk to Papoose [Kelvin's nickname] yourself." Slaughter said he was going to "do what he had to do" and "take them one by one." Although Hill tried to get Slaughter and Jones to follow her to her house and talk to her son, they declined.

Powell testified that Helton needed money and told him that Slaughter would pay them $500 for burning up Hill's car. Powell further testified that he and Helton went to the Hill residence with the jug of gasoline and set the car on fire. An expert in fire investigation testified that the vehicle fire never went beyond the hood of the car and that the house fire was of separate origin. Additionally, there was a strong odor of gasoline around both the car and the front porch of the house. He further opined that, based on the rapidity of the fire and its large surface area, an accelerant was most likely used to advance the house fire. *Helton,* supra.

After the fire, Powell and Helton went to Slaughter's house to receive payment. Helton went in while Powell sat on the front steps. Powell could hear Helton and Slaughter talking inside the open front door. Powell heard Slaughter say "for real you did it" and then laugh and say he would be "through there before two o'clock for payment." Powell saw Slaughter put something in Helton's hand and, as he and Helton walked away from Slaughter's house, Helton showed Powell two pieces of cocaine and said, "he gave us this for right now." Helton and Powell went to Helton's house to await payment from Slaughter. When Slaughter did not come, Helton went to Slaughter's house and, when he returned to his home, he gave Powell $100.

There were six people asleep in the house when the fire started.

Slaughter's argument is that the testimony of his accomplice Powell was inadequately corroborated as required by OCGA § 24-4-8. That section provides that, although testimony of a single witness will generally establish a fact, when, in a felony case, "the only witness is an accomplice, the testimony of a single witness is not sufficient. Nevertheless, corroborating circumstances may dispense with

the necessity for the testimony of a second witness. . . ."

"While such corroborating evidence must do more than merely 'cast on the defendant a grave suspicion of (doubt),' it may consist entirely of circumstantial evidence, or evidence of an accused's conduct before and after the crime that infers he participated therein. The sufficiency of the corroborating evidence is a matter for the jury, and if the verdict is based upon the slightest evidence of corroboration connecting an accused to a crime, even if it is circumstantial, it is legally sufficient." *Edmond v. State*, 267 Ga. 285, 287 (2) (476 SE2d 731) (1996). See *Hefner v. State*, 224 Ga. App. 612, 613 (1) (481 SE2d 599) (1997); *Moore v. State*, 224 Ga. App. 797, 798 (1) (481 SE2d 892) (1997).

There was sufficient corroborating evidence of Slaughter's participation, beginning with his assault by Kelvin and his talk with Hill and ending with his discussion with Helton in Powell's hearing after the incident. *Whitton v. State*, 178 Ga. App. 862, 865 (1) (344 SE2d 703) (1986); *Whitfield v. State*, 159 Ga. App. 398, 400 (6) (283 SE2d 627) (1981).

Additionally, there was adequate proof of the conspiracy which allowed the admission of the two co-conspirators' statements against Slaughter. *Cromwell v. State*, 218 Ga. App. 481, 482 (2) (462 SE2d 388) (1995).

2. Slaughter's second enumeration is that the court failed to charge OCGA § 24-4-8, even though none was requested by Slaughter.

No such written request having been made below, there was no error. *Campbell v. State*, 207 Ga. App. 902, 905 (4) (429 SE2d 538) (1993); *Jackson v. State*, 205 Ga. App. 452, 453 (2) (422 SE2d 304) (1992). Even had one been requested, failure to give it was not error. See *Ladson v. State*, 248 Ga. 470, 476 (9) (285 SE2d 508) (1981); *Smith v. State*, 193 Ga. App. 208, 210 (5) (387 SE2d 419) (1989).

3. Finally, Slaughter contends that his trial counsel was ineffective.

"A trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous. [Cit.]" *Garrett v. State*, 196 Ga. App. 872, 874 (1) (397 SE2d 205) (1990); see also *Hayes v. State*, 211 Ga. App. 801, 802 (1) (440 SE2d 539) (1994). A conviction will not be reversed on the basis of ineffective assistance of counsel unless "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Carter v. State*, 176 Ga. App. 632, 633 (337 SE2d 413) (1985), quoting from *Strickland v. Washington*, 466 U. S. 668, 669 (104 SC 2052, 80 LE2d 674) (1984).

(a) One of the grounds alleged for ineffective assistance is trial

counsel's failure to request a charge under OCGA § 24-4-8. As discussed in Division 2, supra, however, even with such a request, it is not reversible error not to give it.

(b) Appellate counsel also contends that trial counsel's withdrawal of his motion to sever Slaughter's trial from co-defendant Helton's trial and his failure to assert a *Bruton*[1] violation regarding Powell's testimony were errors rendering his representation ineffective.

Regarding the motion to sever, trial counsel testified at the motion for new trial hearing that he withdrew the motion to sever because he "knew we were maintaining a plea of not guilty and that . . . Helton, was maintaining a not guilty plea as well. I opted to go ahead from a strategic standpoint to go forward that way knowing that the State's witness was going to be Mr. Powell."

Such a tactical decision does not equate with ineffective assistance of counsel. *Hammond v. State*, 264 Ga. 879, 882 (4) (452 SE2d 745) (1995); *Riser v. State*, 222 Ga. App. 348, 349 (474 SE2d 632) (1996); *Williams v. State*, 218 Ga. App. 785, 788 (3) (463 SE2d 372) (1995).

(c) *Bruton* applies to situations where there is the "admission in a joint trial of a *non-testifying co-defendant's statement* incriminating the defendant [thereby] violat[ing] the defendant's right to confront and cross-examine the co-defendant. There is no *Bruton* violation unless the *non-testifying co-defendant's statement,* standing alone, clearly implicates the defendant. [Cit.]" (Emphasis supplied.) *Griffeth v. State*, 224 Ga. App. 462, 465 (3) (480 SE2d 889) (1997). Since Powell testified and was subject to cross-examination, there was no error. See *Moore v. State*, supra at 798 (2).

*Judgment affirmed. Beasley and Smith, JJ., concur.*

DECIDED JULY 8, 1997 —
RECONSIDERATION DENIED JULY 30, 1997 — 

*Wolfe & Steel, Larry D. Wolfe*, for appellant.
*Peter J. Skandalakis, District Attorney, Jeffery W. Hunt, Assistant District Attorney*, for appellee.

---

[1] *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).