A05A0791. POLITE v. THE STATE.

(614 SE2d 849)

BLACKBURN, Presiding Judge.

Following his convictions of armed robbery,[1] possession of a firearm during the commission of a crime,[2] robbery by intimidation,[3] and criminal damage to property in the second degree,[4] and the denial of his motion for new trial, Malik Jamal Polite appeals, contending that: (1) the evidence was insufficient to support his convictions; (2) the State violated his rights by telling the jury in its opening argument that a co-defendant told the police that Polite had been involved in the robbery; (3) he received ineffective assistance of counsel; and (4) the trial court erred in charging the jury. For the reasons set forth below, we affirm.

1. Polite contends that the evidence was insufficient to support his convictions.

> The standard of review for the sufficiency of evidence, in reviewing either a motion for a directed verdict or a motion for new trial, is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We view the evidence in the light most favorable to the verdict, and [Polite] no longer enjoy[s] the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the

---

[1] OCGA § 16-8-41.

[2] OCGA § 16-11-106.

[3] OCGA § 16-8-40.

[4] OCGA § 16-7-23.

standard of *Jackson v. Virginia.*[5] Conflicts in the testimony of the witnesses are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

*Smith v. State.*[6]

So viewed, the evidence shows that in October 2002, Malik Polite and his brother, Saleem Polite, made plans to rob an Outback Steakhouse where Saleem worked as an after-hours janitor with Jose Capers. On October 26, 2002, Saleem and Capers arrived at the restaurant at about 2:00 a.m. Capers went to the back of the restaurant to clean the kitchen area, and Saleem went to the front to clean the dining area. Shortly thereafter, Malik arrived in his car with Charles Wilson and Christopher Ricks. As planned, Saleem let them in through the side door. Wilson had a crowbar, Ricks had a sledgehammer, and Malik was armed with a Larsen .32 semi-automatic handgun.

Saleem called Capers to the front of the restaurant. When Capers came to the front, he saw three masked men, one of whom had Saleem in a chokehold and was holding a crowbar to his throat. Malik pulled out his gun, pointed it at Capers's head, and ordered him and Saleem to go to the kitchen, where the two were forced to lie face down on the floor. Wilson stood guard over Saleem and Capers; he also took Capers's cell phone from him. Malik and Ricks kicked in the office door and began pounding on the safe with a sledgehammer. When they were unable to open the safe with the sledgehammer, they pried open the cash registers in the front of the restaurant. Finding no money in the registers, the three left. Saleem and Capers ran out the back door and set off the alarm; minutes later, they reentered the restaurant and called the police.

A detective with the Savannah Police Department investigated the robbery and talked with both Saleem and Capers at the scene of the crime. Saleem told the detective that the robbers had come out of the restroom, where they had been hiding.

In the week following the robbery, the detective picked up Wilson and took him to the police station for questioning. After being advised of his *Miranda* rights, Wilson gave a statement setting forth the details of the crimes. Wilson also testified as a State's witness to the same facts at trial.

---

[5] *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[6] *Smith v. State,* 269 Ga. App. 133, 133-134 (1) (603 SE2d 445) (2004).

After speaking with the managing partner of the restaurant, who testified that he had made sure the restrooms were empty before leaving the restaurant on the night of the robbery, the detective regarded Saleem as a suspect rather than a victim and brought him in for questioning. After the detective advised him of his *Miranda* rights, Saleem confessed that he had let the others into the restaurant and had participated in the robbery.

The day after he took Saleem Polite's statement, the detective interviewed Malik Polite. Malik, after being made aware of his constitutional rights, admitted his involvement in the robbery. He also gave the detective information that led to the recovery of the .32 semi-automatic pistol. The handgun was identified at trial by Capers as the gun used in the robbery, and by the detective as the gun he recovered following Malik's directions. This evidence was more than sufficient to allow a rational trier of fact to find Malik Polite guilty beyond a reasonable doubt of the crimes of which he was convicted.

2. In a separate enumeration of error, Polite contends that the evidence was insufficient to support his conviction for criminal damage to property in the second degree because there was no admissible evidence establishing that the amount of damage to the restaurant was in excess of $500. We disagree.

"In order to sustain a conviction for criminal damage to property in the second degree, the State was required to offer probative evidence which would sufficiently allow the factfinder to conclude [Polite] intentionally caused in excess of $500 damage to the property of another person without that person's consent." (Punctuation omitted.) *In the Interest of A. F.*[7] One proper method for proving the value of the damage is evidence of the cost to repair the property. Id.

In this case, there was testimony, among other things, that the electronic locking mechanism on the outside of the safe had been torn off and the safe itself had gouges in it. A bill from the lock and key company which repaired the safe showed that the cost of repair to the safe alone was in excess of $1,000. This evidence was sufficient to support Polite's conviction under OCGA § 16-7-23 (a). The managing partner's testimony as to the amount actually paid to repair the safe "was from his own personal knowledge. He was not stating his opinion as to value but was stating a fact. From this fact . . . , the jury had sufficient evidence to determine that the damage was in excess of [$500]." *Van Voltenburg v. State.*[8]

---

[7] *In the Interest of A. F.*, 236 Ga. App. 60 (1) (510 SE2d 910) (1999).

[8] *Van Voltenburg v. State*, 138 Ga. App. 628, 629 (1) (227 SE2d 451) (1976).

3. Citing *Bruton v. United States*,[9] Polite next contends that the trial court erred by allowing the State prosecutor to tell the jury that his co-defendant brother told the police that Polite had been involved in the robbery. We find no reversible error.

In his opening argument to the jury, the State prosecutor stated the following with regard to the statement Saleem Polite gave to the police:

> And according to the statement of Saleem Polite, after being clowned about whether or not he's scared, he admits that he'll do that, and, in fact, on the night that this happened, or early morning hours, actually, he leaves the door open. He leaves the Drayton Street door open, and that the other three come in, that they put on their masks, and they ask him to — or tell him to have Jose come back to the area where they can gain control of him. *And he says in his statement that his brother, Malik Polite, was the man with the gun.*

(Emphasis supplied.) "Pretermitting the question of whether a *Bruton* challenge was even appropriate here (as no *evidence* was actually introduced)," (emphasis in original) *Williams v. State*,[10] we hold that Polite waived any issue relating to the statement made during the State's opening argument because he made no objection to the statement at trial. *Pickard v. State*.[11]

Moreover, "*Bruton* applies to situations where there is the admission in a joint trial of a non-testifying co-defendant's statement incriminating the defendant thereby violating the defendant's right to confront and cross-examine the co-defendant." (Punctuation and emphasis omitted.) *Slaughter v. State*.[12] The statement to which Polite objects was made in the State's opening argument. As the trial judge correctly instructed the jury before the State made its opening argument, "such statements by attorneys are not evidence." *Sutton v. State*.[13]

Further, even if *Bruton* were implicated by the prosecutor's statement and proper objection had been made, there was no reversible error because any error was harmless. "To be harmless, a *Bruton* error must be harmless beyond a reasonable doubt. Where overwhelming evidence of a defendant's guilt exists apart from the

---

[9] *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).
[10] *Williams v. State*, 261 Ga. App. 793, 794 (2) (584 SE2d 64) (2003).
[11] *Pickard v. State*, 257 Ga. App. 642, 643 (2) (572 SE2d 660) (2002).
[12] *Slaughter v. State*, 227 Ga. App. 739, 742 (3) (c) (490 SE2d 399) (1997).
[13] *Sutton v. State*, 263 Ga. App. 188, 191 (2) (587 SE2d 379) (2003).

statement of the co-defendant, then any violation of *Bruton* is harmless beyond a reasonable doubt." (Citation and punctuation omitted.) *Goins v. State.*[14] While the statement identifies Malik Polite as the robber with the gun, Wilson also testified at trial that Malik Polite had the gun and identified the gun introduced as State's Exhibit 2 as Polite's gun. Further, the testimony established that Malik acknowledged that he had a handgun and that he had given the detective information which led to the gun's recovery. "Any incriminating information contained in [the prosecuting attorney's] statement was merely cumulative of properly admitted testimony. Consequently, even assuming that [the prosecutor's] statement was erroneously admitted, [Polite] cannot show that he was harmed by its admission." *Meadows v. State.*[15]

4. Polite next argues that he received ineffective assistance of counsel because trial counsel failed to object to the prosecutor's opening statement, as set forth above. This argument is without merit.

> The burden of establishing the ineffective assistance of trial counsel is a heavy one that requires an appellant to establish both that counsel's performance fell below an objective standard of reasonableness, and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the trial would have been different. Regarding this second prong, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings, he must establish a reasonable probability that but for the error, his trial would have ended differently. A failure to make a sufficient showing on either of these prongs will be fatal to a claim of ineffective assistance.

(Punctuation and footnotes omitted.) *Wallace v. State.*[16] "A trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous." (Punctuation omitted.) *Lee v. State.*[17]

We need not decide whether counsel performed deficiently. As we determined in Division 3, even if objection to the statement had been both proper and timely, the same evidence was properly introduced

---

[14] *Goins v. State*, 259 Ga. App. 739, 741 (2) (578 SE2d 308) (2003).
[15] *Meadows v. State*, 264 Ga. App. 160, 163 (1) (590 SE2d 173) (2003).
[16] *Wallace v. State*, 272 Ga. 501, 503-504 (3) (530 SE2d 721) (2000).
[17] *Lee v. State*, 205 Ga. App. 139, 141 (421 SE2d 301) (1992).

later in the trial, and, as such, counsel's failure to object to the statement did not contribute to the proceeding's outcome. *Lee*, supra.

5. Polite also maintains that he received ineffective assistance of counsel because trial counsel failed to present character witnesses on his behalf. We disagree.

"The determination as to which defense witnesses will be called is a matter of trial strategy and tactics. Trial strategy and tactics do not equate with ineffective assistance of counsel. Effectiveness is not judged by hindsight or by the result." (Punctuation omitted.) *Wallace v. State*.[18] Trial counsel testified at the hearing on the motion for new trial that she had talked with Polite about presenting character witnesses but had decided against doing so in order to keep Polite's prior record of carrying a weapon on school property from coming before the jury. This was a valid reason for not calling the potential witnesses, and that strategy did not constitute ineffective assistance. Accordingly, the trial court did not err in denying this claim of ineffective assistance of counsel. Id.

6. Polite next argues that he received ineffective assistance of counsel because trial counsel failed to present his mother as an alibi witness. This argument, too, is meritless.

First, as a factual matter, the testimony of Polite's mother would not have established that Polite was somewhere else at the time of the robbery of the restaurant. The robbery occurred shortly after 2:00 a.m. Polite's mother testified at the hearing on the motion for new trial that she had seen her son around 1:00 or 1:30 a.m. before going to bed, and then did not see him again until she awakened him around 6:00 or 6:30 a.m. after receiving a call from Capers about the robbery.

More importantly, trial counsel testified at the hearing on the motion for new trial that Polite never indicated that he had an alibi and that counsel never received any information that there was anyone who could provide Polite with an alibi. Instead, counsel was faced with a case involving four co-defendants, all of whom had given statements to the police implicating themselves and all of their co-defendants. In this situation, counsel decided to pursue a defense based on contradictions in the co-defendants' statements. As the decision not to present an alibi defense "involved trial tactics and strategy left to the discretion of the attorney after consultation with the client, the trial court did not err in rejecting this ineffective assistance claim." *Randolph v. State*.[19]

7. Polite contends that the trial court erred in charging the jury as follows: "The testimony of one accomplice may be supported by the

---

[18] *Wallace v. State*, 228 Ga. App. 686, 691 (4) (492 SE2d 595) (1997).

[19] *Randolph v. State*, 225 Ga. App. 324, 325 (484 SE2d 1) (1997).

testimony of another accomplice. Whether or not the testimony of one accomplice does in fact support the testimony of another accomplice is a matter for you to determine as the jury in this case." Citing *Crosby v. State*,[20] Polite argues that since only one accomplice, Wilson, testified, the inapplicable instruction authorized the jury to reach a finding of guilty by a theory not supported by the evidence.

Polite's claim of error regarding this charge was directly addressed and rejected by our decision in *Saxon v. State*.[21]

> A similar charge was given in *Crosby*, and only one accomplice testified. Although we stated that the charge was a correct principle of law in the abstract, we found the charge to be potentially confusing and misleading. We concluded that the inapplicable instruction authorized the jury to reach a finding of guilty by a theory not supported by the evidence.
>
> As in *Crosby*, only one accomplice testified in this case, and the trial court charged the jury that the testimony of an accomplice could be corroborated by that of another. But a critical distinction exists between this case and *Crosby*. In that case the sufficiency of the corroboration of the accomplice's testimony was one of the vital issues at trial. Here, however, the sufficiency of the corroboration of [Wilson's] testimony was hardly a vital issue, given [Polite's] own incriminating statements. [Wilson's] testimony was amply corroborated, and we cannot conclude that a significant danger exists that [Polite] was convicted on a theory unauthorized by the evidence. Harm as well as error must be shown to warrant reversal. [Polite] has not shown that he was harmed by the trial court's charge, and we therefore find no reversible error.

(Citations and punctuation omitted.) Id. at 552-553 (2).

8. Finally, Polite maintains that the trial court erred in instructing the jury as follows: "I also charge you that where transactions involving relatives are under review, slight circumstances are often sufficient to induce a belief that there was collusion between the parties." Polite contends that this charge was not tailored to the evidence. We disagree.

---

[20] *Crosby v. State*, 150 Ga. App. 555 (258 SE2d 264) (1979).
[21] *Saxon v. State*, 266 Ga. App. 547 (597 SE2d 608) (2004).

First, "[t]his instruction was a correct statement of the law." *Gaston v. State.*[22] Second, evidence supported the instruction. "To authorize a jury instruction on a subject, there need only be produced at trial slight evidence supporting the theory of the charge." (Punctuation omitted.) Id. In this case, the evidence was that Malik Polite and his brother planned the robbery of the restaurant. The brother, as a participant in the robbery, opened the side door so that the robbers could enter the restaurant. Malik Polite transported Wilson and Ricks to the restaurant in his car, entered the restaurant through the door the brother had unlocked, robbed Capers of his cellphone, and attempted to rob the safe and the cash registers. This evidence was more than sufficient to support the instruction to the jury.

*Judgment affirmed. Miller and Bernes, JJ., concur.*

DECIDED MAY 10, 2005 — 

*Mark J. Nathan*, for appellant.
*Spencer Lawton, Jr., District Attorney, Ronald M. Adams, Assistant District Attorney*, for appellee.

---

[22] *Gaston v. State*, 257 Ga. App. 480, 486 (6) (b) (571 SE2d 477) (2002).