## A07A1351. ENGLISH v. THE STATE.
### (654 SE2d 150)

JOHNSON, Presiding Judge.

A jury found Arthur English IV guilty of three counts of theft by receiving in connection with property he received from his brother. He appeals from the convictions.

On appeal from a criminal conviction, the appellant no longer enjoys the presumption of innocence, and we view the evidence in a light most favorable to the verdict.[1] So viewed, the evidence shows that English, who is an attorney, represented his brother John English in a civil suit without charging him a fee. In February 2001, soon after the civil case was resolved, John English and a friend, Michael Self, came to English's home and gave English a washer and dryer to thank him for his legal assistance. English saw a microwave

---

[1] *Stuart v. State*, 267 Ga. App. 463, 463-464 (1) (600 SE2d 629) (2004).

oven in his brother's truck and asked about it. John English gave English the microwave oven as well.

In August 2001, English inquired about an all-terrain vehicle he saw on John English's property. John English told him it belonged to a friend. English wanted to buy the vehicle, so he gave John English $3,000 cash and told him to bring him the vehicle and a bill of sale, which he did. English stored the vehicle at the home of his father-in-law, Fred Lewis. Lewis had purchased a house and two acres of land on the English family farm property from English and English's father in May 2004. English lived elsewhere.

In March 2004, John English and Self were caught burglarizing a Georgia Department of Natural Resources warehouse. The men were arrested. In June 2005, Self pleaded guilty to several offenses. After pleading guilty, Self told sheriff's deputies that John English was involved in the theft of a Yamaha Grizzly 600 four-wheeler, that the vehicle "had gone to" English, and that it was on Lewis' property. Self also admitted that he and John English burglarized a mobile home in 2001 and stole a washer, dryer, microwave oven and other items.

In June 2005, officers went to Lewis' house to ask about stolen property. Lewis phoned English, who drove over. Two officers were standing next to the four-wheeler English received from John English in 2001. One officer told English that the vehicle appeared to have been stolen. English replied that the vehicle was his. Deputies seized the vehicle.

The same month, officers received a warrant to arrest English and search his home. At that time, no stolen items were found. In February 2006, officers obtained another warrant. This time they found and seized the washer and dryer English received from his brother.

English's secretary, Johanna Caldwell, testified at trial that she heard John English say, in English's presence, that the four-wheeler was stolen, and she heard the English brothers occasionally discuss criminal activity. Caldwell added that English told her that the microwave oven he had given her was stolen, so she had better not say anything to get English in trouble. Self testified that as John English was dropping off the washer and dryer he heard John English tell his brother that the washer, dryer and microwave oven had just been stolen from a trailer. Self also testified that John English told him that he had told English that the all-terrain vehicle was stolen. English was convicted of theft by receiving the vehicle, the washer and dryer, and the microwave oven.

1. English contends the state failed to prove the washer and dryer had a value exceeding $500. Therefore, he says, the court should have sentenced him for a misdemeanor offense instead of a felony. We agree.

While value is not an element of the crime of theft by receiving stolen property, it is relevant in order to distinguish between a felony and a misdemeanor for sentencing purposes.[2] A person convicted under OCGA § 16-8-12 (a) (1) of theft by receiving stolen property exceeding $500 in value can receive a felony sentence of one to ten years.[3]

The proper measure of value under OCGA § 16-8-12 is the fair cash market value either at the time and place of the theft or at any time during the receipt or concealment of the property.[4] "But it is also true that the cost price, if coupled with other evidence, may be admitted as an element upon which an opinion may be formed as to the item's value."[5] And the "testimony of the owner of the value of stolen items based upon his experience in buying them, coupled with the jury's awareness of the value of 'everyday objects,' is sufficient to allow the jury to consider such opinion evidence and make reasonable deductions exercising their own knowledge and ideas."[6]

The owner of the washer and dryer testified that the washer and dryer were included in the purchase of his mobile home. He offered no testimony regarding the cost or value of those items, and said nothing about their age or condition.

The state maintains, however, that their value was proven based upon: (a) English's testimony that after the washer and dryer his brother had given him were seized, he purchased a new washer and dryer pair for between $550 and $600; (b) English's testimony that he received the stolen appliances as payment for his legal services, which services he valued at between $600 and $900; and (c) the jury's knowledge of the value of everyday objects. This was not sufficient.

There is no evidence in this case of the fair cash market value of the washer and dryer, no proof as to what the stolen appliances cost, and no testimony from the owner regarding the value of the items based on his experience. The state cites no authority holding that evidence of the type relied upon here (i.e., the price the defendant paid for new appliances, or how much the defendant's professional services would have been worth had he charged his brother a fee) is

[2] *DeLong v. State*, 270 Ga. App. 173, 175 (2) (606 SE2d 107) (2004).

[3] *Campbell v. State*, 275 Ga. App. 8, 10 (3) (619 SE2d 720) (2005).

[4] Id. at 11 (3).

[5] (Citation and punctuation omitted.) *Yarber v. State*, 144 Ga. App. 781 (242 SE2d 372) (1978).

[6] (Citation and punctuation omitted.) *Campbell*, supra.

sufficient to prove the appliances were worth more than $500. And while the state urges that the jury could determine value where the items are everyday objects of which the jury knows the market value, he cites no authority where that was sufficient absent any evidence of the items' cost, condition or cash market value.[7] Here, the state's evidence as to value is insufficient to support a felony theft by receiving conviction.[8] However, because the evidence does support a misdemeanor theft by receiving charge, we vacate the felony conviction and remand with the direction that a conviction and sentence be entered for the misdemeanor offense.[9]

2. English contends the trial court erred in allowing hearsay testimony from Self, Caldwell, and Steve Scott. He says the court improperly ruled that the statements were allowable as declarations of a co-conspirator, when the state failed to prove the existence of a conspiracy and that the declarant and defendant were part of that conspiracy.

English challenges the admissibility of the following testimony: Caldwell's testimony that John English stated in English's presence that the four-wheeler was stolen; Caldwell's testimony that she heard English and his brother discussing criminal activity; Caldwell's testimony that a client came into the office upset and told English that he "needed to get some stuff off his property," to which English replied "Don't worry about it, it will be taken care of"; Self's testimony that John English told English, as John English and Self were dropping off the appliances, that John English and Self had just taken the items from a vacant trailer; Self's testimony that John English told him that he had told English that the four-wheeler was stolen; Self's testimony that he and English moved stolen property to a "client's house" for safekeeping, and when Self asked English what he was going to do with the items, English told him not to worry about it, since "all of that stuff [is] liable to be in Mississippi tomorrow"; Self's testimony that John English told him that English told him how to get away with doing "illegal things"; Self's testimony that he stole a boat, that the English brothers came to get the boat, and that

---

[7] The state relies upon *Roundtree v. State*, 191 Ga. App. 423 (382 SE2d 173) (1989) (jury's awareness of market value of everyday objects *coupled with evidence concerning the cost, date of purchase, and condition of the property*, was sufficient evidence of stolen property's value); and *Franklin v. State*, 184 Ga. App. 396, 397 (3) (361 SE2d 700) (1987) (store employee's testimony that a VCR identical to the one stolen sells for $424, when *coupled with the jury's awareness of everyday objects*, was sufficient to prove former felony value of over $100).

[8] See *Waters v. State*, 252 Ga. App. 194, 196 (1) (b) (555 SE2d 859) (2001) (state's evidence of value insufficient to support felony theft conviction where owner testified she could probably sell saddle for $1,500 to $1,800, that she bought it new in 1972 for about $2,500, and that it escalated in value, since she gave no basis for her opinion of value).

[9] See id.

he told English the boat was stolen; Steve Scott's testimony that John English told him that he always checked with English before doing anything illegal so that he would know how to get out of trouble if he got caught.

After the fact of conspiracy is proved, the declarations of any one of the conspirators during the pendency of the criminal project shall be admissible against all.[10] The state must make a prima facie showing of the existence of the conspiracy, without regard to the declarations of the co-conspirators, in order to admit their out-of-court declarations.[11] OCGA § 24-3-5 does not render a conspirator incompetent to testify as to facts; it simply prohibits a conspirator from testifying as to declarations made by one conspirator outside the presence of, and upon the trial of, another conspirator.[12] The testimony of a co-conspirator as to facts within his knowledge involves no hearsay problem, since the statements are given on the stand and are open to cross-examination.[13] Moreover, anything seen or heard by a witness in the presence of the defendant is admissible and does not constitute hearsay.[14] And, where a witness testifies as to what he or she told another person, it is not hearsay.[15] Finally, a defendant's noncustodial, voluntary incriminating statements are admissible through the testimony of anyone who heard the statements.[16]

We note that most of the testimony at issue was admissible on grounds other than as declarations of co-conspirators. For instance, many of the statements were heard by the testifying witness in English's presence, or were made by English or the testifying witness.[17] In any event, the state did make a prima facie showing of the existence of a conspiracy without relying on co-conspirators' declarations.

Self testified that he and John English stole a washer, dryer and microwave oven and delivered them to English, and that he later saw the appliances in English's home and asked what English was going to do about them. English replied that he would do nothing since no one would find the appliances. Self further testified that he saw the four-wheeler in English's possession, which he knew was stolen, and

---

[10] OCGA § 24-3-5.

[11] *Livingston v. State*, 271 Ga. 714, 719 (3) (524 SE2d 222) (1999).

[12] *Duren v. State*, 177 Ga. App. 421, 422 (1) (339 SE2d 394) (1986).

[13] *Whitton v. State*, 178 Ga. App. 862, 865 (1) (344 SE2d 703) (1986).

[14] *Grindle v. State*, 151 Ga. App. 164 (2) (259 SE2d 166) (1979).

[15] *Holloman v. State*, 167 Ga. App. 683, 684 (3) (307 SE2d 266) (1983).

[16] See *Duren*, supra; see also *Meyers v. State*, 281 Ga. App. 670, 672 (2) (637 SE2d 78) (2006).

[17] See *Grindle*, supra (incriminating statements, if freely and voluntarily made, are admissible; anything heard by a witness in defendant's presence is admissible); *Holloman*, supra.

that English had told Self he was not going to move the vehicle because authorities had already seen it and would be suspicious if it were moved. Self also testified that English and John English helped him move a boat and dispose of two shotguns that Self told English were stolen. Self testified that English told him he needed to "get rid of" some "stuff" for John English, including two four-wheel vehicles. These were facts Self knew from personal observation, or which he learned from English, and involved no hearsay problems.[18] Moreover, Caldwell, who was not a co-conspirator, testified that English remarked to her that unlike John English and Self, he "didn't get caught," and since English had given the stolen microwave oven to Caldwell and her mother, she had "best not say anything."

The trial judge may admit testimony by co-conspirators before the conspiracy has been proved, provided its existence is ultimately shown at trial.[19] English's willingness to help John English and Self dispose of property he had been told was stolen shows that he was an active co-conspirator.[20] There was evidence from which a jury could find a conspiracy,[21] independent of the hearsay declarations of co-conspirators. The trial court did not abuse its discretion in allowing the testimony.[22]

3. English contends the trial court erred in denying his motion to suppress. He argues that officers violated his right to privacy when they entered the land where the four-wheeler was seized.

A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises has not had any of his Fourth Amendment rights infringed.[23] Because Fourth Amendment rights are personal, a defendant may move to suppress evidence obtained through an illegal search and seizure only when his own rights were violated.[24] In order to challenge the search, a defendant must show he had an expectation of privacy in the premises searched.[25]

In this case, English left the all-terrain vehicle on Lewis' property. English neither resided on the premises nor had any ownership interest in Lewis' property. He argues he had a key to the house, had access to the property and used it regularly for cleaning up and eating while hunting and fishing in the area.

[18] See generally *Whitton*, supra.

[19] *Livingston*, supra.

[20] *Robertson v. State*, 268 Ga. 772, 777 (11) (493 SE2d 697) (1997).

[21] *Dickerson v. State*, 280 Ga. App. 29, 31-34 (1) (633 SE2d 367) (2006).

[22] See *Guerra v. State*, 210 Ga. App. 102, 103-105 (1), (3) (a) (435 SE2d 476) (1993).

[23] *Ferron v. State*, 216 Ga. App. 456 (454 SE2d 637) (1995).

[24] *Robinson v. State*, 226 Ga. App. 406, 408 (2) (486 SE2d 667) (1997).

[25] *In the Interest of M. H.*, 247 Ga. App. 84, 85 (543 SE2d 390) (2000).

It is true that a person can have a legally sufficient interest in a place other than his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion.[26] However, the Fourth Amendment protects people, not areas, from unreasonable searches and seizures.[27] That is, it protects a citizen from a warrantless search of those places where he is entitled to an expectation of privacy; it does not concern itself with mere technical trespasses but with those only which deprive the complainant of his privacy in an unreasonable manner.[28]

English was not occupying or "seeking shelter" in Lewis' home at the time the vehicle was seized.[29] Furthermore, the vehicle was not inside the home, but was outside in a field, visible to some extent from a public road.[30] English has not met his burden of demonstrating that he had a legitimate expectation of privacy in Lewis' property.[31] Although the trial court gave other reasons for denying the motion to suppress, a judgment right for any reason will be affirmed.[32]

4. English contends the trial court erred in denying his motion to suppress the washer and dryer seized from his home when the magistrate who issued the warrant was not neutral and detached. English argues the magistrate could not be neutral because English practiced law in the judge's courtroom, worked on committees with the judge, discussed political campaigns with the judge, and placed the judge's political campaign signs on his property. English adds that the judge had recused himself from a civil case involving English and the sheriff, and later recused himself from this criminal case. At the suppression hearing, the judge denied having any bias, but noted that if he had any bias, it would have been in favor of English.

It is fundamental that the adjudicator who determines whether probable cause exists to issue a warrant must be neutral and detached.[33] This rule requires severance and disengagement from the activities of law enforcement.[34] There is no evidence that the issuing judge in this case was connected with the activities of law enforcement. And, the fact that a judge recuses himself is not to be construed

---

[26] *State v. Brown*, 212 Ga. App. 800, 802 (2) (442 SE2d 818) (1994).

[27] *Stephenson v. State*, 171 Ga. App. 938, 940 (321 SE2d 433) (1984).

[28] Id.

[29] Compare *Brown*, supra at 802-803 (2) (overnight guest had reasonable expectation of privacy in host's home, having sought shelter there on recurring basis *and on this occasion*).

[30] See generally *Williams v. State*, 249 Ga. App. 119, 121-122 (1) (b) (547 SE2d 395) (2001).

[31] See *Robinson*, supra; *Keishian v. State*, 202 Ga. App. 718, 719 (415 SE2d 324) (1992).

[32] See *Prather v. State*, 279 Ga. App. 873, 876 (1) (633 SE2d 46) (2006).

[33] *Clark v. State*, 217 Ga. App. 113, 117 (2) (456 SE2d 672) (1995).

[34] *Sanders v. State*, 151 Ga. App. 590, 592 (2) (260 SE2d 504) (1979).

as an admission or denial of any grounds that would support recusal.[35] Factual and credibility determinations of this sort made by a trial judge after a suppression hearing must be accepted by appellate courts unless such determinations are clearly erroneous.[36] The trial court's determination that the magistrate in this case was able to act as a neutral and detached magistrate was not clearly erroneous.[37]

5. English contends the trial court erred in allowing his employer to testify against him when their communications came within the attorney-client privilege.

Michael Mears, who was the director of the Georgia Public Defender Standards Council, testified that he had a conversation with English, the public defender for the Griffin Judicial Circuit, concerning the all-terrain vehicle. According to Mears, English told him that John English brought the seller of the vehicle to English's office, and English bought the vehicle from the seller at the office. This testimony contradicted English's testimony that he bought the vehicle at John English's house and never met the seller. English urges Mears was acting as his attorney at the time of the discussion, so the communication was privileged.

Mears, however, testified that he expressly disavowed any attorney-client privilege "at the very beginning" of his meeting with English. He told English their relationship was employer-employee, not attorney-client, and the purpose of the meeting was to determine whether Mears would initiate employment termination proceedings. Mears added that he had not offered to represent English since a prior phone call regarding a pre-warrant hearing. The trial court only allowed testimony pertaining to conversations which occurred after Mears expressly told English they did not have an attorney-client relationship. The trial court did not err in allowing the testimony.[38] Moreover, it is unlikely this testimony contributed to the verdict.[39]

6. English contends the statute of limitation period expired on Count 2 (washer and dryer) and Count 3 (all-terrain vehicle) before the prosecution began in March 2006. We disagree.

OCGA § 17-3-1 (c) provides, in pertinent part, that prosecution for felony theft must be commenced within four years after the crime is committed. This four-year requirement does not include any period in which the person committing the crime is unknown or the crime is unknown.[40]

---

[35] *Moody v. State*, 256 Ga. App. 65, 67 (567 SE2d 709) (2002).

[36] *Sanders*, supra.

[37] See id.

[38] See *Cantrell v. State*, 184 Ga. App. 384, 386 (2) (361 SE2d 689) (1987).

[39] See *Nettles v. State*, 276 Ga. App. 259, 260 (623 SE2d 140) (2005).

[40] OCGA § 17-3-2 (2).

In this case, deputies did not know until 2005 that English received the stolen washer, dryer or all-terrain vehicle. Because the statute was tolled during the period in which the person committing the crimes was unknown, the prosecution commenced in 2006 was not time-barred.[41]

English urges that Self's knowledge regarding his identity was imputed to the state because Self worked for the Georgia State Patrol (as a radio operator). He correctly states that the knowledge at issue in OCGA § 17-3-2 (2) is the knowledge of the state, including that imputed to the state through the knowledge of the prosecutor.[42] But he adds that "prosecutor" should include those in law enforcement. English cites no authority for the latter statement.[43] In any event, it is clear that Self was not acting in any law enforcement capacity or in the interest of law enforcement in connection with the crimes charged here. In fact, English concedes in his brief that Self "hid his criminal ways from his law enforcement employer." This enumeration is without merit.

*Judgment affirmed in part and vacated in part, and case remanded with direction. Phipps and Mikell, JJ., concur.*

DECIDED OCTOBER 25, 2007 —
RECONSIDERATION DENIED NOVEMBER 16, 2007.

*Hogue & Hogue, Franklin J. Hogue*, for appellant.
*Richard G. Milam, District Attorney, J. David Fowler, Assistant District Attorney, Joseph F. Burford*, for appellee.

---

[41] See id.

[42] *Lowman v. State*, 204 Ga. App. 655, 655-656 (420 SE2d 94) (1992).

[43] In fact, in a case involving the meaning of "knowledge" (rather than the meaning of "prosecutor") pursuant to OCGA § 17-3-2 (2), this Court stated that the knowledge test applies only to knowledge of the prosecuting officer actually handling the proceeding. See *Beasley v. State*, 244 Ga. App. 836, 838-839 (536 SE2d 825) (2000).