## S97A0865. ROBERTSON v. THE STATE.

(493 SE2d 697)

THOMPSON, Justice.

Defendant Billy Ray Robertson, Kenneth Brady, and Felton Avery were indicted for the murders of Tony and Kathy Reid. Thereafter, defendant was re-indicted separately and charged with conspiracy to commit burglary, burglary, conspiracy to commit armed robbery, armed robbery, conspiracy to commit murder, and murder. The jury found defendant guilty of the first four counts, as well as felony murder. The trial court merged the conspiracy convictions with their substantive counterparts and sentenced defendant to life (for felony murder), plus 20 consecutive years (for armed robbery) and an additional 20 consecutive years (for burglary). This appeal followed.[1]

1. Viewing the evidence in a light upholding the verdict of the jury, we find the following:

On December 18 or December 19, 1989, Tony and Kathy Reid were murdered, execution-style, in their home, which had been ransacked by intruders. Tony Reid was in the used car business and defendant, who was also in that business, was well acquainted with him. In fact, at one time, defendant worked for Reid.

Kenneth Brady had been released from prison in October 1989. Defendant and Kenneth's brother, Junior Brady, were good friends. In early December, Kenneth dropped by defendant's house and played cards with defendant and Junior. The next day, Kenneth telephoned defendant and invited him to meet at a motel in Gwinnett County.

Defendant went to the motel and met with Kenneth. They smoked marijuana and inhaled cocaine. Then defendant and Brady went for a drive in the country where they continued to inhale cocaine and drink beer.

A few days later, Kenneth asked Felton Avery if he would be

---

[1] The crimes were committed on December 18 or December 19, 1989. Defendant was indicted along with Brady and Avery on February 10, 1993, and charged with two counts of murder and two counts of armed robbery. He was re-indicted on December 12, 1994. Trial commenced on February 27, 1995, and continued through March 9, 1995, when the jury returned its verdict. The trial court sentenced defendant on March 14, 1995, and he filed a notice of appeal on March 31, 1995. The case was docketed in this Court on March 7, 1997, and orally argued on June 16, 1997.

willing to burglarize the Reids' house with him. Avery balked because Kenneth told him that Tony Reid would be home. Later that night, Kenneth telephoned Avery and asked for his help. He told Avery that the burglary had been bungled and the Reids had been killed. He asked Avery to go to the Reids' house and retrieve a piece of tape he left on Tony's wrist. Avery did so and Kenneth gave him $800.

The next afternoon, defendant and Junior Brady visited a used car lot. While Junior spoke with the owner of the lot, Kenneth drove up, talked with defendant, and put $100 in defendant's pocket. Later, the owner of the lot watched the evening news and learned that the Reids had been murdered.

Not long after, defendant telephoned Junior Brady and asked him to meet at a Wal-Mart. As defendant and Junior walked the aisles of the store, defendant told Junior that he was in trouble because he had shown Kenneth where the Reids lived; that both he and his family had been threatened; and that Junior would have to keep Kenneth away from him. That night, Junior talked with Kenneth; he then called defendant and told him he had nothing to worry about — and he should keep his mouth shut. Shortly thereafter, defendant went to South Carolina where he painted houses for several weeks.

Around that time, Kenneth and Felton Avery drove by defendant's house. Kenneth told Avery that the man who "set up" the Reids lived in the house; that he was being interviewed by the GBI; and that, if anything were to happen to Kenneth, Avery should kill the "set up" man.

Kenneth gave Avery information for two other burglaries: Peach State Salvage Company and the home of Jerry Reed. Avery burglarized the Peach State Salvage Company in November 1989. He surveilled Reed's house in January 1990, but decided not to burglarize it.

In the past, defendant had worked for both Peach State Salvage and Jerry Reed. Kenneth told Avery that the "set up" man who supplied information on Tony Reid, also supplied information on Peach State Salvage and Jerry Reed.

The evidence was sufficient to enable a rational trier of fact to find defendant guilty beyond a reasonable doubt of burglary, armed robbery and felony murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). "[T]his is exactly the sort of case where the jury is best empowered to resolve any conflicts in the evidence and determine the credibility of the witnesses and adjudge the facts. [Cits.]" *Palmore v. State*, 264 Ga. 108 (441 SE2d 405) (1994).

Contrary to defendant's contention, the evidence is not insufficient because no one identified the "set up" man by name. After all,

Avery testified that defendant's house was pointed out to him as the place where the "set up" man lived.

2. The evidence was more than sufficient to show beyond a reasonable doubt that the Reids' house was entered without authority and with the intent to commit a felony or theft therein. OCGA § 16-7-1 (a). Defendant's contention that there was no evidence of a burglary is wholly without merit.

3. Defendant's assertion that the State should have been estopped to rely upon Avery's testimony because his denial of guilt was inconsistent with the fact that he was convicted was not raised below and will not be considered on appeal. *Earnest v. State*, 262 Ga. 494, 495 (422 SE2d 188) (1992).

4. Defendant asserts that his constitutional right to be present at all critical stages of the proceedings was violated. See *Kentucky v. Stincer*, 482 U. S. 730 (III) (107 SC 2658, 96 LE2d 631) (1987). In this regard, defendant points out that the trial judge met with the prospective members of the jury panel prior to voir dire, in the absence of defendant and his lawyer, and asked these qualifying questions: whether they were citizens of the county; whether they had served on the grand jury; and whether they would suffer any hardship if they were chosen to serve as jurors.

We do not condone this practice. All voir dire should take place in the courtroom in the presence of all parties. However, in view of the limited scope of the trial court's questions, we find no error. See generally *Ferrell v. State*, 261 Ga. 115, 122 (12) (401 SE2d 741) (1991).

5. Defendant argues that the trial court erred in permitting the prosecutor to read the indictment to prospective jurors, ask the first three statutory questions set forth in OCGA § 15-12-164 (a), and announce that the jurors appeared to be qualified. In this regard, defendant asserts that the trial court impermissibly delegated those judicial tasks to a member of the executive branch of government. This assertion is without merit. The court may delegate its responsibilities to its officers, including the prosecuting attorney. *Hicks v. State*, 232 Ga. 393, 400 (207 SE2d 30) (1974). See also *Davis v. State*, 189 Ga. App. 439 (2) (376 SE2d 230) (1988).

6. Because 19 out of 41 prospective jurors disclosed during voir dire that they were aware of the fact that Brady and Avery had been tried and convicted for their part in the Reids' murders, defendant asserts that the trial court erred in declining to excuse these jurors for cause; and that the trial court erred in denying his motion for change of venue. We find no error.

There is no requirement that a juror be ignorant of every fact and issue involved in a case. The question is whether the juror can lay aside any impressions he may have and reach a verdict based on the evidence presented at trial. *Irvin v. Dowd*, 366 U. S. 717, 722 (81

SC 1639, 6 LE2d 751) (1961); *Norton v. State*, 263 Ga. 448, 449 (2) (435 SE2d 30) (1993). Defendant failed to show that any of the 19 jurors held opinions which were so fixed and definite that they were unable to set them aside and judge the case upon the evidence.[2] *Johnson v. State*, 262 Ga. 652 (2) (424 SE2d 271) (1993). And defendant failed to show that he could not receive a fair trial in Forsyth County because the jury panel had a fixed opinion of his guilt. *Happoldt v. State*, 267 Ga. 126, 128 (2) (475 SE2d 627) (1996). The trial court did not err in failing to excuse any of the 19 jurors for cause or in denying the motion for change of venue.

7. During voir dire, a potential juror who had been employed as a police dispatcher, mentioned that he had seen defendant in the jail in January 1993. Asked if he had any further contact with defendant, the potential juror replied that he did not even know why defendant had been put in jail. Defendant did not move to excuse this juror; and he did not seek curative or remedial instructions. Instead, he waited until the entire panel was qualified to assert that the panel was tainted and should be discharged. It follows that defendant's assertion that the trial court erred in refusing to discharge the panel or take other corrective action was not preserved for review. *Herrin v. State*, 230 Ga. 476 (1) (197 SE2d 734) (1973) (failure to make timely and specific objection is a waiver).

8. Defendant asserts the trial court erred in permitting the prosecution to introduce the convictions of his co-conspirators into evidence. However, although the prosecution made several allusions to the trial of the co-conspirators, defendant points to only one instance where the jury heard *evidence* of a co-conspirator's conviction and defendant interposed a contemporaneous objection. That occurred when the prosecutor asked Avery whether he had been convicted at the previous trial and Avery answered affirmatively. Because Avery was subject to cross-examination it cannot be said the ruling was erroneous. See *United States v. Eason*, 920 F2d 731 (11th Cir. 1990) (conviction of co-conspirator or co-defendant not subject to cross-examination is plain error).

9. The prosecutor asked a GBI agent if defendant had given testimony at the trial of Avery and Brady, and the agent replied that he had. A few minutes later, defendant objected and moved for a mistrial, arguing that he had testified in Avery's and Brady's trial under a grant of immunity, and that the mere mention of his having testified violated OCGA § 24-9-28. Thereupon, the trial court instructed the jury that it was to disregard any testimony as to whether defendant had given testimony in a previous trial. Defendant renewed his

---

[2] Three other jurors were excused for fixed opinions.

motion for a mistrial and the trial court overruled the motion. We find no harmful error. Even if it could be said that the agent's testimony violated OCGA § 24-9-28, but see *Highfield v. State*, 246 Ga. 478, 483 (7) (272 SE2d 62) (1980), the trial court's curative instruction was sufficient to remove any potential prejudice.[3]

10. The trial court permitted the State to show that Avery, Brady, and defendant conspired to burglarize the home of Jerry Reed as a similar transaction.[4] Defendant asserts that that evidence was admitted improperly because, although Avery went to Reed's home to "case" it, he did not actually burglarize it. Completing the argument, defendant posits that an incomplete crime cannot be a similar transaction in this murder case. We disagree. Defendant was charged, inter alia, with conspiracy to burglarize the home of Tony and Kathy Reid. The conspiracy to burglarize the Reed house is sufficiently similar to the crime charged that proof that defendant committed the former tends to prove that he also committed the latter. See generally *Williams v. State*, 261 Ga. 640, 642 (409 SE2d 649) (1991). The mere fact that the Reed house was not actually burglarized is of no consequence.

11. Having found that the evidence was sufficient to establish a prima facie case of conspiracy, the trial court properly ruled that Brady's statements were admissible against defendant. OCGA § 24-3-5; *Denison v. State*, 258 Ga. 690 (1) (373 SE2d 503) (1988). Contrary to defendant's assertion, Avery's testimony as to the statements made by Brady was not inadmissible simply because Brady was not available for cross-examination. *Castell v. State*, 250 Ga. 776, 779-780 (301 SE2d 234) (1983). The statements contained sufficient indicia of reliability to ensure that defendant's Sixth Amendment rights were not violated. Id.

In ruling on the admissibility of Brady's statements, the trial court made reference to the evidence presented in the previous trial of the co-conspirators, as well as to the evidence presented in this case. Defendant asserts the trial court based its decision to allow Brady's statements into evidence solely on the basis of the evidence presented in the previous trial. This assertion is without merit. Although the trial court alluded to the evidence presented at the previous trial, it allowed Brady's statements into evidence on the basis of the evidence presented in this trial — and that evidence was suffi-

---

[3] Defendant's assertion that the prosecutor engaged in misconduct by deliberately introducing evidence that defendant had testified previously was not raised below and, therefore, will not be addressed on appeal. *Boutwell v. State*, 256 Ga. 63, 65-66 (344 SE2d 222) (1986).

[4] Defendant asserts that the trial court initially ruled that this evidence was not a similar transaction; and that it subsequently reversed itself erroneously. This assertion is not supported by the record.

cient to show a prima facie case of conspiracy. See *Waldrip v. State*, 266 Ga. 874, 880 (471 SE2d 857) (1996) (conspiracy may be proven by circumstantial evidence); *Bruce v. State*, 263 Ga. 273, 274 (430 SE2d 745) (1993) (trial court has broad discretion regarding order of proof and may allow statements of co-conspirators before presentation of prima facie case of conspiracy where such a case was established by all evidence at trial).

Defendant asserts that Avery's testimony refuted the State's claim that there was a conspiracy because he testified that he refused to participate in the burglary of the Reids' house and he was not present when the Reids were murdered. This assertion is without merit. Avery admitted that he conspired with Brady to conceal the identity of the perpetrators. He was, therefore, a co-conspirator with Brady and Avery.[5]

12. (a) Gene Hammett was properly permitted to testify that Brady admitted his guilt. OCGA § 24-3-5. Thereafter, although defendant did not attack Gene's credibility, the trial court permitted Gerald Hammett to testify that Gene told him that Brady admitted his guilt. Defendant asserts that Gene's prior consistent out-of-court statement was not admissible. We agree.

The admissibility of prior inconsistent out-of-court statements is governed by *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982). The admissibility of prior consistent out-of-court statements is controlled by *Cuzzort v. State*, 254 Ga. 745 (334 SE2d 661) (1985).

> *Cuzzort* stands for the proposition that *where the veracity of a witness is at issue*, and that witness is present at trial, under oath, and subject to cross-examination, the prior consistent out-of-court statement of the witness is admissible.

(Emphasis supplied.) *Edwards v. State*, 255 Ga. 149, 151 (2) (335 SE2d 869) (1985).

Inasmuch as the veracity of Gene Hammett was not at issue, Gene's prior consistent statement was inadmissible. However, any error in admitting that statement was harmless because Gene implicated Brady, not defendant.

(b) The trial court did not err in allowing a GBI agent to testify that Avery told the agent about his conversations with Brady. Because Avery's credibility was at issue, his prior consistent out-of-court statement was admissible. *Cuzzort v. State*, supra.

---

[5] Even if it could be said that Avery did not conspire with Brady and defendant, the State established a prima facie case of conspiracy between Brady and defendant. Thus, Brady's statements would be admissible against defendant nonetheless.

13. The trial court did not err in permitting Avery to testify that, when Brady showed him the house of the "set up" man, Brady told him that the "set up" man was being questioned by the GBI and that, if anything should happen to Brady, he should kill the "set up" man. Statements made by co-conspirators during the concealment phase of the conspiracy, which includes concealment of the crime, the identity of the perpetrators, or both, are admissible. See *Waldrip v. State*, 266 Ga. 874, 880, supra. Brady's statements to Avery show that he was still conspiring to conceal the crimes. See *Bundrage v. State*, 265 Ga. 813 (2) (462 SE2d 719) (1995).

14. Defendant's contention that the trial court erred in admitting into evidence tape recordings of conversations between Brady and Gene Hammett is without merit. The State established a proper foundation for the use of the tapes. See *Steve M. Solomon, Jr., Inc. v. Edgar*, 92 Ga. App. 207, 211-212 (88 SE2d 167) (1955). The tapes were not inadmissible simply because the State made enhanced copies (to eliminate background noise). Nor were they inadmissible because portions were inaudible. "Where a proper foundation is laid for the admission of a taped conversation, and part of the conversation is inaudible, the admission of the evidence is in the trial court's discretion. *Burke v. State*, 248 Ga. 124 (2) (281 SE2d 607) (1981)." *Guess v. State*, 264 Ga. 335, 336 (2) (443 SE2d 477) (1994).

There is no merit in defendant's contention that the trial court erred in permitting the jury to use transcripts of the tapes. The trial court instructed the jury that the tapes, not the transcripts, were evidence; that if there were conflicts between the tapes and the transcripts, the jury was to be guided by the tapes; and that the jury was the final arbiter of what was said on the tapes. See *Washington v. State*, 268 Ga. 598 (492 SE2d 197) (1997); *Guess v. State*, supra.

Defendant asserts that the tapes were introduced in violation of OCGA § 16-11-60 et seq. because they were made without court authorization. This assertion presents nothing for review because it was not raised below. "Errors not raised in the trial court will not be heard on appeal. [Cit.]" *Earnest v. State*, 262 Ga. 494, 495 (1), supra.

15. There is no requirement that video and audio tapes be transcribed as long as they have been made a part of the record and are available for review by this Court. *State v. Knowles*, 247 Ga. 218 (274 SE2d 468) (1981). It cannot be said, therefore, that the trial court erred in refusing to require the court reporter to transcribe the tapes as they were played.

16. We need not decide whether the trial court erred in charging the jury that felony murder is a "lesser" included offense of malice murder. See generally *Henry v. State*, 265 Ga. 732, 737 (6) (462 SE2d 737) (1995). After all, felony murder can be an included offense of malice murder. OCGA § 16-1-6. And, having been indicted for malice

murder, armed robbery and burglary, defendant was on notice that he could be found guilty of felony murder. *McCrary v. State*, 252 Ga. 521, 524 (314 SE2d 662) (1984). Thus, the trial court was correct to charge the jury that felony murder was an included offense of malice murder. And it cannot be said that Robertson was harmed by the addition of the word "lesser."

17. It was not error for the trial court to instruct the jury that it could consider a witness' prior consistent statement as substantive evidence. *Cuzzort v. State*, 254 Ga. 745, supra.

18. Defendant contends that voluntary intoxication precluded his ability to form the intent necessary to conspire to commit criminal acts and that, therefore, the trial court erred in charging the principles set forth in OCGA § 16-3-4. We find no error. *Foster v. State*, 258 Ga. 736, 743 (10) (374 SE2d 188) (1988).

19. The trial court correctly charged that, if a conspiracy was proved beyond a reasonable doubt by evidence other than the statements of any co-conspirator, the jury could consider the statements of a co-conspirator, made during and in the furtherance of the conspiracy, against all conspirators. OCGA § 24-3-5; *Gunter v. State*, 243 Ga. 651, 659 (256 SE2d 341) (1979).

20. Defendant asserts the trial court erred in failing to give some of his requested charges. However, defendant does not specify which requests he contends should have been charged. And he makes no argument as to why it was error for the trial court to fail to charge them. Moreover, none of the requests were included in the record on appeal because, in his notice of appeal, defendant instructed the clerk to omit everything, except what he specifically designated, from the record; and the requests were not specifically designated for inclusion in the record. Accordingly, this Court has nothing to review. See *Howe v. State*, 250 Ga. 811, 814 (301 SE2d 280) (1983).

21. Absent a stipulation by both parties, polygraph results are not admissible. *Willis v. State*, 249 Ga. 261, 265 (290 SE2d 87) (1982); *State v. Chambers*, 240 Ga. 76, 77 (239 SE2d 324) (1977). Inasmuch as the State did not stipulate the admissibility of defendant's polygraph test results, it cannot be said that the trial court erred in refusing to admit those results.

Relying upon *McMorris v. Israel*, 643 F2d 458 (7th Cir. 1981), defendant asserts that his due process rights have been violated because the State refused to stipulate the admissibility of the results of a polygraph test which was conducted by the GBI. Defendant's reliance upon *McMorris* is misplaced. That case has already been considered and rejected by this Court. *Willis v. State*, supra.

22. The jury did not specify whether it found the armed robbery or the burglary to be the underlying felony for the felony murder. Nevertheless the trial court sentenced defendant separately for the

felony murder, armed robbery and burglary convictions.

Only one felony is required to trigger a felony murder conviction; and where it is unclear which of two or more felonies is the underlying felony for a felony murder conviction, the trial court must merge the most severe in terms of punishment. *Thompson v. State,* 263 Ga. 23, 25 (426 SE2d 895) (1993). Because armed robbery is more severe than burglary in terms of punishment,[6] that offense must merge with the felony murder conviction. Accordingly, the trial court is hereby ordered to vacate the sentence for armed robbery.

*Judgment affirmed in part and remanded in part with direction. All the Justices concur, except Hines, J., who concurs in the judgment only as to Division 4.*

DECIDED DECEMBER 3, 1997 —
RECONSIDERATION DENIED DECEMBER 19, 1997.

*Glenville Haldi,* for appellant.

*Garry T. Moss, District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General,* for appellee.

---

[6] Armed robbery carries a maximum penalty of death or imprisonment for life. OCGA § 16-8-41 (b). Burglary carries a maximum penalty of imprisonment for 20 years. OCGA § 16-7-1.