S98A0739. AVERY v. THE STATE.
(502 SE2d 230)

SEARS, Justice.

Appellant Felton Junior Avery appeals his convictions and life sentence for murder and armed robbery.[1] As explained below, we conclude that the trial court did not err in refusing to sever Avery's trial from the trial of a co-defendant, in admitting the incriminating statements of a co-conspirator, or in permitting the jury to listen to audiotapes of such statements. Therefore, we affirm.

Viewing the evidence in a light most favorable to the jury's verdict, we find that on the night of December 18-19, 1989, Tony and Kathy Reid were murdered, execution style, in their home. The home was ransacked, and stolen items included a briefcase belonging to Mr. Reid. A bloody print of a shoe, sized eleven or eleven-and-a-half, was found at the scene of the crime. Avery's shoe size is eleven-and-a-half.

Thereafter, co-defendant Brady spoke several times with a police informant, Hammett, about the murder and robbery of the Reids. Hammett surreptitiously recorded several of these conversations. In the recorded conversations, later introduced at Avery's and Brady's joint trial, Brady stated that with the assistance of a "set up man,"[2] he and Avery had planned and then committed the robbery and murders, and that Brady had remained outside while Avery went into the Reids' home and killed them. Brady also stated that he and Avery had planned to obtain a great deal of money from the robbery, but that, because the Reids had just deposited a large sum in the bank, the robbery only netted them a small amount. Brady also told

---

[1] Appellant was indicted along with Kenneth Lamar Brady and Billy Ray Robertson on February 10, 1993, and charged with two counts of murder and two counts of armed robbery. The joint trial of appellant and Brady was held on March 14-28, 1994, Robertson's trial having been severed. Appellant was found guilty on all four counts, and was sentenced to consecutive life imprisonment sentences for both of the murder convictions, and life sentences on both of the armed robbery convictions, to run concurrent to each other, but consecutive to the second life sentence for murder. Appellant timely filed his notice of appeal on April 26, 1994. Thereafter, the trial court extended the time in which to file the transcript of the proceedings. The court reporter's transcript finally was filed with the superior court clerk's office on January 30, 1998, the appeal was docketed with this Court on February 9, 1998, and submitted for decision without oral argument on April 6, 1998.

[2] See *Robertson v. State,* 268 Ga. 772 (493 SE2d 697) (1997).

Hammett that if he, Brady, had gone into the home instead of Avery, the murders would not have occurred.

Avery's girl friend at the time of the murders testified that Avery stated that he and Brady had committed two murders, in which Brady killed a woman, and Avery killed a man. The girl friend also testified that shortly after the murders occurred, she noticed that Avery had acquired a briefcase that he did not previously possess. The girl friend of co-defendant Brady testified that, while in Avery's presence, Brady had admitted being involved in the murder of a man and a woman, and that he (Brady) had killed the woman. Items stolen from the Reids' home were found in Brady's possession.

1. The evidence introduced at trial, viewed most favorably to the verdict, was sufficient to enable a rational trier of fact to find Avery guilty of murder and robbery.[3]

2. Having found that the evidence was sufficient to establish a prima facie case of conspiracy, the trial court properly ruled that Brady's surreptitiously recorded statements, in which he implicated Avery in the Reids' murders, were admissible in the State's prosecution of Avery.[4] Statements made by a conspirator during the course of a conspiracy are admissible against all conspirators after the fact of the conspiracy is proved.[5] The conspiracy is in progress until the ultimate purpose is accomplished, including efforts to conceal the crime and the identity of the perpetrators.[6] The agreement that forms the basis of a conspiracy may be a tacit understanding between conspirators.[7]

Here, the evidence showed that, together, Avery and Brady planned the robbery and murder, went to the Reids' home late at night and committed the crimes, separately admitted their involvement in the crimes, and concealed the crimes and their participation therein for some time. At a minimum, this evidence is sufficient to support an inference that Avery and Brady had a tacit understanding to commit the robbery and murders.[8] Accordingly, there was no error in admitting Brady's recorded statements in the State's case against Avery as the statements of a co-conspirator.

3. Because Brady's statements were admissible against Avery as the statements of a co-conspirator, we reject Avery's contention that, because Brady's statements inculpated both him and Avery, the trial

---

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[4] See OCGA § 24-3-5; *Denison v. State*, 258 Ga. 690 (373 SE2d 503) (1988).

[5] *Denison*, supra.

[6] *Hardy v. State*, 245 Ga. 272 (264 SE2d 209) (1980), vacated on other grounds, 449 U. S. 988 (101 SC 523, 66 LE2d 285), reaffirmed, 247 Ga. 235 (275 SE2d 319) (1981), cert. denied, 454 U. S. 1114 (102 SC 690, 70 LE2d 653) (1981).

[7] *Drane v. State*, 265 Ga. 255, 257 (455 SE2d 27) (1995).

[8] *Drane*, supra; see *Jones v. State*, 242 Ga. 893 (252 SE2d 394) (1979).

court erred in denying Avery's motion to sever his trial from that of Brady.[9]

4. We conclude that the recorded statements of Brady possessed sufficient indicia of reliability to warrant their admission, based upon the testimony of Hammett that he had listened to the tapes and reviewed the transcription thereof, and that both were accurate testimonials as to what Brady told him regarding the crimes.

5. Finally, we reject Avery's claim that the tape recordings of Brady's statements should have been excluded, because portions of the tapes were inaudible. Based upon Hammett's testimony, the trial court provided jurors with transcripts of the tapes' contents for use while the tapes were being played. There was no discrepancy as to the circumstances under which the tapes were made or the speakers' identities. Prior to the playing of the tapes, the trial court instructed the jurors that the taped conversation itself was evidence, but that the transcripts provided to them were not evidence. Rather, jurors were instructed that the transcripts were intended only to assist them in understanding portions of the tapes that they might have difficulty comprehending. Any discrepancies between what the jurors heard from the tapes and read in the transcripts were to be resolved in favor of what was heard from the tapes. If jurors could not understand what was said on the tapes, they were instructed to disregard the corresponding transcripted portion of the recording. The jurors were not allowed to take notes from the transcripts (but they could takes notes based upon what they heard), and the transcripts were collected after the tapes were played. Under these circumstances, there was no error in permitting the tapes to be played for the jury, even if a portion of the tapes may have been inaudible.[10]

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 13, 1998.

*John R. Jackson,* for appellant.

*Garry T. Moss, District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General,* for appellee.

---

[9] See *Robertson,* 268 Ga. at 776; *Willingham v. State,* 265 Ga. 435, 436 (457 SE2d 561) (1995).

[10] *Guess v. State,* 264 Ga. 335, 336 (443 SE2d 477) (1994).