S06A0787. BROOKS v. THE STATE.
S06A0789. BALL v. THE STATE.
S06A0854. CLARK v. THE STATE.
(635 SE2d 723)

SEARS, Chief Justice.

Seboris Brooks, Antwann Ball, and Komeika Clark were convicted in 2004 of the malice murder and armed robbery of Louis Sutton.[1] Each defendant appeals, arguing that the evidence was insufficient to sustain their convictions and that the trials should have been conducted separately. Finding no error, we affirm the convictions.

1. The evidence presented at trial showed that on the day of the murder, Henry County narcotics officers were monitoring drug activity at the residence where the victim lived. Early in the evening, the police drove by the residence and observed a black Ford Taurus matching the description of Ball's car in the driveway. Later, the police returned and attempted to conduct a controlled purchase, but the police informant received no answer at the door when he attempted to enter. The undercover police then observed the owners of the residence return home. After finding Sutton, a regular house guest, dead in their home, the homeowners called the police and the undercover police left the area. Sutton had been killed by a single gunshot wound.

Two witnesses, Terrence Tyler and Robin Nelson, testified that Clark told them on separate occasions that she, Brooks, and Ball had attempted to rob Sutton, and that Sutton was killed during the struggle. Clark had stated that she gained entry into the house first and then let Brooks and Ball in. Another witness, Byron Ferguson, testified that while he was with Brooks in jail, Brooks told him that he, Ball, and Clark had killed a man during a robbery in which they stole $20,000. Terry Jester testified that he overheard Ball admit to killing Sutton and state that his cousin Brooks was going to take the rap for it. Thus, the evidence showed that each defendant made statements implicating themselves in the crimes.

---

[1] The crimes were committed on October 20, 2003. On March 25, 2004, Brooks, Ball, and Clark were indicted by a Henry County grand jury for malice murder, two counts of felony murder, armed robbery, and possession of a firearm in the commission of a felony. On June 29, 2004, a Henry County jury convicted all defendants of all counts. The felony murder convictions stood vacated as a matter of law and the trial court concluded that the armed robbery convictions merged into the vacated felony murder convictions. Each defendant received a life sentence for malice murder and a five year consecutive sentence for the possession offense. Brooks moved for a new trial on July 26, 2004, and amended the motion on June 28, 2005. Ball moved for a new trial on July 2, 2004, and amended the motion on June 1, 2005. Clark moved for a new trial on July 20, 2004. The trial court denied the motions on August 8, 2005, and all defendants filed timely notices of appeal. The cases were docketed in this Court on January 6, 2006, and January 20, 2006, and submitted for decision on the briefs.

In addition to the money that was stolen from the home, one of the homeowners also testified that certain electronic equipment had been taken during the robbery.

After reviewing the evidence in the light most favorable to the jury's verdict, we conclude that there was sufficient evidence for a rational trier of fact to find each defendant guilty of the crimes for which they were convicted.[2]

2. Brooks and Ball both argue that the trial court erred in the admission of certain hearsay statements made by their co-defendants. Ball argues that the trial court erred by admitting the hearsay statements made by Brooks to Ferguson. Similarly, Brooks argues that the trial court erred by not giving a limiting instruction informing the jury that the testimony of Nelson, regarding statements Clark made to Nelson, could only be considered against Clark, and not against Brooks. Because the statements were all properly admitted against all defendants as co-conspirator's statements under OCGA § 24-3-5, the trial court did not err in admitting the statements or refusing to provide limiting instructions therewith.

Under OCGA § 24-3-5, "[a]fter the fact of the conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all." A conspiracy may be shown by proof of "an agreement between two or more persons to commit a crime."[3] The existence of the conspiracy agreement " 'may be established by direct proof, or by inference, as a deduction from acts and conduct, which discloses a common design on their part to act together for the accomplishment of the unlawful purpose.' "[4] "The existence of a common design or purpose between two or more persons to commit an unlawful act may be shown by direct or circumstantial evidence."[5]

During a pre-trial hearing, the State established prima facie evidence of the existence of an agreement between the defendants to rob Louis Sutton.[6] The physical evidence at the scene of the crime, as well as statements from other witnesses, corroborated the defendants' descriptions of the house as a drug house. A narcotics agent witnessed a car in the driveway on the night of the crime that matched the description of Ball's car. Ball's statement that he had shot the victim in the side matched the actual wound on the victim.

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Clark's sole enumeration of error is that the evidence was insufficient to support her convictions.

[3] *Kilgore v. State*, 251 Ga. 291, 298 (305 SE2d 82) (1983).

[4] *Kennemore v. State*, 222 Ga. 362, 363 (149 SE2d 791) (1966) (quoting *Fincher v. State*, 211 Ga. 89 (84 SE2d 76) (1954)).

[5] *Harris v. State*, 255 Ga. 500, 501 (340 SE2d 4) (1986).

[6] *Brown v. State*, 262 Ga. 223, 225 (416 SE2d 508) (1992).

A witness testified that Brooks possessed drugs and money in a hotel room shortly after the crime. One of Clark's friends testified that she knew the details of the robbery that had occurred. Also, each of the defendants' statements corroborated the other defendants' statements, including the specific participants in the crime, even though none of the statements were made in the presence of another defendant.

The defendants claim that the statements at issue do not fit within the co-conspirator exception to the hearsay rule because any conspiracy had ended by the time the statements were made. Specifically, the defendants complain about Clark's statements to Nelson, which she made while in jail, and Brooks' statements to Ferguson, which were also made in jail. Other statements were also admitted as co-conspirator's statements, including Clark's statement to Tyler, which occurred before the defendants were considered suspects in this case, and a statement Ball made in jail that was overheard by Jester. None of the defendants gave incriminating statements to police before making the statements at issue.

" 'Hearsay statements made by a conspirator during the course of a conspiracy, including the concealment phase, are admissible against all conspirators.' "[7] The defendants claim, however, that the statements occurred after any conspiracy had effectively ended, because the fact that defendants were talking about the crime meant that they were making no effort to conceal the existence of the conspiracy. We find that the statements in this case were made during the concealment phase, even though the defendants were talking about their involvement and some of the statements were made after the defendants had been arrested.

"The rule is that so long as the conspiracy to conceal the fact that a crime has been committed or the identity of the perpetrators of the offense continues, the parties to such conspiracy are to be considered so much a unit that the declarations of either are admissible against the other."[8] Merely because the defendants were talking about the crimes to third parties does not evidence the end of the concealment of the conspiracy.[9] Moreover, "[a] conspiracy or the concealment phase of it does not end just because one or more participants have

---

[7] *Harris*, 255 Ga. at 501 (quoting *Fortner v. State*, 248 Ga. 107 (281 SE2d 533) (1981)).

[8] *Chatterton v. State*, 221 Ga. 424, 432 (144 SE2d 726) (1965).

[9] See, e.g., *Avery v. State*, 269 Ga. 584, 585 (502 SE2d 230) (1998) (incriminating statements to undercover police informant after the crime qualified as admissible co-conspirator statement); *Ottis v. State*, 269 Ga. 151, 154 (496 SE2d 264) (1998) (incriminating statements regarding past crime made to uninvolved third parties admissible as co-conspirator statement); *Brown*, 262 Ga. at 225 (conspirator statement to third party implicating speaker and co-conspirator after the crime admissible).

been arrested and jailed."[10] Had the incriminating statements been made to the police, it is likely that the conspiracy would have ended.[11] But the statements at issue in this case were made while participants were still hiding their identities from the police, and were thus made during the concealment phase of the conspiracy, and were admissible against all defendants.

Moreover, the admission of the statements did not violate the defendants' rights under the Confrontation Clause.

> The admission of a co-conspirator's statement does not violate the Confrontation Clause as long as there are "sufficient indicia of reliability." Factors indicating reliability include (1) the absence of express assertion of past facts, (2) the co-conspirator had personal knowledge of the facts he was stating, (3) the possibility that the co-conspirator's recollection was faulty or remote, and (4) the co-conspirator had no reason to lie about the defendant's involvement in the crime.[12]

In this case, only the first factor, that the statements contain assertions of past facts, weighs against the admission of the statements. However, where only the first factor weighs against admission, and the other factors illustrate the reliability of the statement, it does not violate the Confrontation Clause to admit the statements against all co-conspirators.[13]

The statements at issue in this case were made by all three defendants, within a few months of the crimes, at different times both before and after they were incarcerated. The defendants were speaking of matters within their personal knowledge, and although each of the defendants made his or her statement outside the presence of the other defendants, all the statements corroborated the other statements and the physical evidence at the crime scene. Most importantly, each defendant implicated himself or herself in their statement, a factor that weighs heavily in favor of reliability.[14]

---

[10] *Mooney v. State*, 243 Ga. 373, 392 (254 SE2d 337) (1979) (abrogated on other grounds by *Horton v. California*, 496 U. S. 128 (110 SC 2301, 110 LE2d 112) (1990)).

[11] See *Crowder v. State*, 237 Ga. 141, 152 (227 SE2d 230) (1976) (confession to police ends conspiracy).

[12] (Citation and punctuation omitted.) *Redwine v. State*, 280 Ga. 58, 64 (623 SE2d 485) (2005) (quoting *Neason v. State*, 277 Ga. 789 (596 SE2d 120) (2004)).

[13] *Copeland v. State*, 266 Ga. 664, 665-666 (469 SE2d 672) (1996); see also *Fetty v. State*, 268 Ga. 365, 371-372 (489 SE2d 813) (1997) (first factor not dispositive if other factors favor admission); *Ottis*, 269 Ga. at 155-156 (same).

[14] *Copeland*, 266 Ga. at 666; *Redwine*, 280 Ga. at 64; *Fetty*, 268 Ga. at 372.

Ball also argues that the admission of the statements violated the Confrontation Clause under *Crawford v. Washington.*[15] Because the statements were not testimonial in nature, however, the statements were properly admitted under the co-conspirator hearsay exception.[16]

The trial court did not err in admitting the hearsay statements as statements of a co-conspirator admissible against each defendant.

3. Brooks and Ball argue that their attorneys were ineffective on several grounds. In order to prevail on a claim of ineffective assistance of counsel, the defendants have the burden to show that their trial counsel's performance was deficient and that but for that deficient performance, there is a reasonable probability that the result of the trial would have been different.[17] Brooks and Ball have failed to meet this burden.

First, Brooks and Ball argue that their attorneys were ineffective for failing to object to the trial court's decision to replace a juror who was late to court with one of the alternate jurors. The defendants have failed to show that the trial court abused its discretion by replacing the late juror with the alternate juror, who was fully qualified to sit on the jury.[18] OCGA § 15-12-172 vests the trial court with the " 'discretion to discharge a juror and replace him or her with an alternate at any time [so long as the trial court] has a sound legal basis.' "[19] The juror's tardiness was a sound basis for her dismissal,[20] and thus trial counsel did not perform deficiently by failing to object.

Second, Brooks argues that his attorney rendered ineffective assistance by failing to object when the State placed Brooks's character at issue by introducing evidence of his use of crack cocaine after the crime. The State had already presented evidence that Brooks had exhibited erratic behavior shortly after the crime, suggesting that he might have been nervous about his involvement in the crime. Trial counsel testified that she and Brooks strategically chose not to object to the crack cocaine evidence because it provided an alternative

---

[15] 541 U. S. 36, 68 (124 SC 1354, 158 LE2d 177) (2004) (admission of out-of-court statements that are testimonial in nature violates the Confrontation Clause unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination).

[16] *Shelton v. State,* 279 Ga. 161, 163 (611 SE2d 11) (2005).

[17] *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Jones v. State,* 279 Ga. 854, 855 (622 SE2d 1) (2005).

[18] OCGA § 15-12-169.

[19] *Worthy v. State,* 223 Ga. App. 612, 613 (478 SE2d 421) (1996) (quoting *Darden v. State,* 212 Ga. App. 345 (441 SE2d 816) (1994)).

[20] See, e.g., *Herring v. State,* 224 Ga. App. 809 (481 SE2d 842) (1997) (no abuse of discretion to replace late juror with alternate).

reason for Brooks's nervous behavior. Trial counsel's reasonable strategic decision does not amount to ineffective assistance.[21]

Third, Brooks argues that his attorney was ineffective for failing to join in the objection tendered by Ball's counsel to the prosecutor's closing argument, which he argues improperly shifted the burden of proof to the defendants. The prosecutor argued that although the defendants had stated during opening argument that they would show that other people had committed the crime, they had failed to provide any such evidence. Trial counsel testified that she did not object because she had already objected once and Ball's counsel's objection to the statement had already been overruled. Furthermore, trial counsel testified that she was prepared to argue extensively about the burden of proof and the judge's instructions on the burden of proof during her closing argument. We find that trial counsel's decision not to add her objection on top of the co-defendant's objection was neither deficient performance nor prejudicial.

Finally, Brooks argues that his attorney rendered ineffective assistance by failing to object to Nelson's testimony that Clark told her that she, Brooks, and Ball acted together in carrying out the robbery and murder. As discussed above in Division 2, however, Nelson's testimony was properly admitted as a statement by a co-conspirator under OCGA § 24-3-5, and trial counsel was not ineffective for failing to object to the admission of that statement.

4. Brooks and Ball argue that the trial court erred by failing to sever their trials from the trials of their co-defendants. The matter was argued by the parties during a pre-trial hearing. We find that the trial court did not abuse its discretion by trying the co-defendants jointly.

This Court has set forth three factors for a trial court to consider in ruling on a defendant's motion to sever: (1) whether the number of defendants will create confusion as to the evidence and law applicable to each one, (2) whether there is a danger that evidence admissible against one defendant will be improperly considered against another defendant, and (3) whether the co-defendants will present antagonistic defenses.[22]

None of the defendants argue that the law or the number of defendants created any confusion for the jury. Instead, Brooks and Ball argue that the statements co-conspirator Clark made to Nelson should have only been admitted against Clark, and that the admission of those statements improperly implicated them in the crime. As

---

[21] *Grier v. State*, 273 Ga. 363, 365 (541 SE2d 369) (2001).
[22] *Cain v. State*, 235 Ga. 128, 129 (218 SE2d 856) (1975).

we have already determined that the trial court properly found those statements to be admissible against all the co-defendants, this argument has no merit.

Moreover, "[t]o be successful, a defendant seeking severance must clearly show that the joinder will result in prejudice to him or her and a consequent denial of due process."[23] Because each defendant was implicated by his or her own statement, the defendants have failed to show how they were prejudiced by the joint trial.[24] Finally, Brooks and Ball have failed to show that the co-defendants presented antagonistic defenses. The trial court did not abuse its discretion in denying the motions to sever.[25]

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 2, 2006.

*Lloyd J. Matthews*, for appellant (case no. S06A0787).

*Sexton, Key & Hendrix, Joseph S. Key*, for appellant (case no. S06A0789).

*Christopher E. Chapman*, for appellant (case no. S06A0854).

*Tommy K. Floyd, District Attorney, Thomas R. McBerry, Blair D. Mahaffey, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Laura D. Dyes, Assistant Attorney General*, for appellee.

---

[23] *Brown v. State*, 262 Ga. 223, 224 (416 SE2d 508) (1992).

[24] *Shelton*, 279 Ga. at 162.

[25] OCGA § 17-8-4.