**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 5, 2018**

# In the Court of Appeals of Georgia

A17A1531. NEALE v. THE STATE.

MCFADDEN, Presiding Judge.

After a jury trial, John C. Neale III was convicted of three counts of child molestation. On appeal, he argues that the three counts merge, but the counts were based on separate conduct so they do not merge. Neale argues that the trial court erred by admitting other acts evidence, but he has not shown that the trial court abused his discretion in determining that the admittedly prejudicial nature of the evidence was outweighed by its probative value. Neale argues that he was denied the right to be present at critical stages of his trial, but Neale did not have a right under the Georgia Constitution to be present when the trial court addressed summoned prospective jurors before his trial started and he has not shown that he raised with the trial court the issue of his inability to hear pretrial proceedings. So we affirm.

1. *Evidence*.

On appeal from a criminal conviction,

> the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

*Morris v. State*, 322 Ga. App. 682 (1) (746 SE2d 162) (2013) (citation omitted). So viewed, the evidence showed that Neale, a retired child and adolescent psychiatrist who lived in Tennessee, was visiting family in Georgia. He was staying with his daughter, L. N. H., her husband, P. H., and their four daughters, E. H., M. H., J. H., and the victim, K. H. K. H. was six years old at the time. Neale visited L. N. H.'s family often. L. N. H. testified that at first Neale slept in an extra bed in J. H.'s room, but then he slept in the same bed as K. H. in K. H.'s room.

One night, L. N. H. entered her daughter K. H.'s bedroom without knocking. She did not usually enter without knocking, but she had been feeling uncomfortable based on things her daughters had described to her. For example, they told her that

K. H., J. H., and Neale would play a game where they tried to pull down each other's pants and that Neale warned the girls not to tell their parents.

When L. N. H. entered the bedroom, Neale was in bed with K. H. L. N. H. saw Neale's hand moving under the covers in the region of K. H.'s vagina. When L. N. H. asked Neale what he was doing, K. H. hopped out of the bed and she was naked. L. N. H. told K. H. to put on her pajamas and then L. N. H. left the room. Ten days later, K. H. told her mother that Neale used a back massager on her vagina.

E. H., M. H., J. H., and K. H. testified about interactions with Neale. E. H. and M. H. testified that when the girls stayed at his house in Tennessee, K. H. slept with Neale in his room with the door locked, which E. H. found to be weird. The sisters would bathe in Neale's large, jetted bathtub. Although E. H. wore her bathing suit, the other girls were naked. Neale would remain in the room, claiming he needed to stay in case their hair got caught in the jets. J. H. testified that he touched her and K. H. on the chest, buttocks, and vagina. K. H. testified that Neale would massage her vagina with a massager. E. H. and M. H. testified that Neale showed them a YouTube video of a horse's penis, which made M. H. feel uncomfortable, and that he demonstrated sexual intercourse to them using wooden models of female and male sexual organs.

The state presented other acts evidence from four witnesses. A witness who was L. N. H.'s best friend in elementary school testified that she was at the Neales' house every weekend. She testified that Neale would watch her and L. N. H. dance naked on a platform in Neale's bedroom. When the witness spent the night, sometimes Neale would sleep in his bed with the two girls while they were naked. He once gave the witness a piggyback ride while she was naked and he touched the witness's vagina. Neale showed the witness medical books with pictures of naked women and explained that she would look like the women in the pictures when she was older.

L. N. H. and another witness, a friend of L. N. H.'s sister, testified that when they were children, they would play strip dodge ball and Neale would watch. The witness testified that Neale would be giddy as he watched. That witness also testified that when she was a teenager, Neale told her that two of his children were close in age because immediately after one of them was born, Neale and his wife had intercourse in the hospital room since his wife could not get enough of him.

L. N. H. testified that when she was in elementary school, Neale instructed her that if she touched her clitoris it felt good. He gave her Penthouse, Playgirl, and Playboy magazines. L. N. H. testified that her older sister slept with Neale until she

4

married at age 19. The bedroom door was locked. Neale paid L. N. H. and her sister to remove their clothing and to allow Neale to photograph them naked. Like her childhood friend, L. N. H. testified that Neale watched her and her friend dance naked.

J. M., Neale's former wife, the mother of L. N. H. and the grandmother of K. H., testified that she and her brothers were living in a children's home when Neale, who was in college, began working there as a volunteer. When she was six years old and Neale was 19, Neale would give J. M. piggyback rides and touch her genitals.

When J. M. was seven or eight, Neale would bring her to his parents' house to spend the night. One night he brought J. M. into his bedroom, removed her underwear, and moved her hand onto his penis. When J. M. was 11, Neale, who was completing his medical internship, became the guardian of J. M. and her brothers and they lived with him. J. M. slept with Neale in his bedroom; she did not have a bedroom of her own. Neale would perform oral sex on J. M., use a vibrator on her, and masturbate her. Eventually they began having intercourse. Neale and J. M. married when she was 15. While J. M. and Neale were married, Neale brought two girls home from an orphanage and J. M. caught him sitting in the dark next to one of the girls with her panties pulled down. J. M. and Neale divorced when J. M. was 23.

5

Neale received custody of their four children. J. M. only saw her children a few times after the divorce.

2. *Merger*.

Neale argues that his three convictions merge because all three acts occurred on the same date and at the same time with no interval in between. We disagree.

The state charged Neale with committing three acts of child molestation on October 8, 2012, one "by placing his hand on and about the genital area of [K. H.]," another "by placing an [unknown] object . . . on and about the genital area of said child," and the third "by laying in the bed, under the covers with said child while she was naked." Each count was based on different conduct so "each of [the] counts was a separate and distinct crime." *Young v. State*, 327 Ga. App. 852, 861 (6) (a) (761 SE2d 801) (2014) (punctuation and footnote omitted). See also *Eggleston v. State*, 247 Ga. App. 540, 543-544 (3) (544 SE2d 722) (2001) (five separate convictions of child molestation based upon distinct unlawful acts committed against the victim during a single incident).

3. *Other acts evidence*.

Neale argues that the trial court abused his discretion in his application of the OCGA § 24-4-403 balancing test when deciding whether to allow the admission of

other acts evidence because any probative value of the evidence was substantially outweighed by its prejudice. "We review this contention of error for abuse of discretion." *Blevins v. State*, __ Ga. App. __, __ (1) (__ SE2d __) (Case No. A17A0639, decided Oct. 30, 2017) (citation and footnote omitted).

In child molestation prosecutions, "evidence of the accused's commission of another offense of child molestation shall be admissible and may be considered for its bearing on any matter to which it is relevant." OCGA § 24-4-414 (a). Pretermitting whether the OCGA § 24-4-403 balancing test applies to the admission of other acts evidence under OCGA § 24-4-414, see *Blevins*, __ Ga. App. at __ (1), Neale has not shown that the trial court abused his discretion in this case. The court conducted a thorough hearing on the issue and issued a 17-page order in which he compared the evidence of other acts with the crimes charged in the instant case. The court addressed the age of the other acts evidence and acknowledged its substantial prejudice, but concluded that its probative value outweighed that prejudice. The court preliminarily ruled that the other acts evidence was admissible, and then revisited his ruling before the other acts witnesses testified, again ruling that the evidence was admissible.

On appeal, Neale simply argues that the other acts evidence was so prejudicial that the trial court should have excluded it. He has not shown that the trial court abused his discretion.

4. *Right to be present at critical stages*.

Neale argues that his right under the Georgia Constitution to be present at critical stages of his trial was violated in two ways: that the trial court communicated with potential jurors outside of his presence and that he could not hear while attending pretrial hearings.

(a) *Trial judge's communications with potential jurors outside of Neale's presence.*

Neale argues that the trial court violated his right under Art. I, Sec. I, Para. XII of the Georgia Constitution of 1983 to be present at a critical stage of his trial, see *Parks v. State,* 275 Ga. 320, 322 (3) (565 SE2d 447) (2002), when, in his absence, the judge addressed the prospective jurors and dismissed some of them. The judge met in the jury assembly area with the more-than-100 prospective jurors who appeared pursuant to the summons for jury service for multiple possible trials before this judge and another judge. According to the judge in his order denying Neale's motion for new trial, the judge ascertained "whether or not any of the jurors should be excused

8

or postponed to another week due to their respective individual circumstances." The judge excused certain jurors because they were statutorily ineligible to serve or statutorily exempt. He also excused certain prospective jurors for discretionary reasons such as medical hardship. And he deferred other prospective jurors. Neale's jury eventually was selected from the remaining prospective jurors.

The practice of the trial judge asking prospective jurors general qualifying questions outside the presence of the defendant is not condoned. *Robertson v. State*, 268 Ga. 772, 774 (4) (493 SE2d 697) (1997); *House v. State*, 237 Ga. App. 504, 507 (2) (c) (515 SE2d 652) (1999). "All voir dire should take place in the courtroom in the presence of all parties. . . . However, . . . fundamentally, the entry of individuals summonsed for jury duty and the preliminary qualifying questions by the [trial court judge] to the venire was neither a trial nor a pre-trial procedure involving any specific defendant." *House*, 237 Ga. App. at 507 (2) (c) (citations and punctuation omitted). "[T]he trial does not begin until the jury has been impaneled and sworn." *Ferguson v. State*, 219 Ga. 33, 35 (3) (131 SE2d 538) (1963). And the right under the Georgia Constitution "to be present does not extend to any and all communications between the trial courts and *potential* jurors." *Payne v. State*, 290 Ga. App. 589, 593 (4) (660 SE2d 405) (2008) (emphasis in original), overruled in part on other grounds by *Reed*

9

*v. State*, 291 Ga. 10, 14 (3) (727 SE2d 112) (2012). We are not persuaded by Neale's argument that *Payne* was wrongly decided.

(b) *Inability to hear at pretrial motions hearings.*

Neale argues that his right to be present was violated because he could not hear the proceedings during three pretrial motions hearings. He points to a hearing on October 1, 2014, which involved Neale's motion for the production of certain documents, including the victim's school and pediatric records, and the state's motion to introduce other acts evidence; a hearing on October 3, 2014, at which the court addressed various matters in anticipation of the trial starting three days later, including his in camera review of the documents Neale had requested, his preliminary ruling on the admissibility of the other acts evidence, and scheduling issues; and the hearing at the start of the trial on October 6, 2014, at which the court addressed Neale's motion for continuance and the state's motions in limine.

"[T]he Georgia Constitution guarantees criminal defendants the right to be present, and see and hear, all the proceedings which are had against him on the trial before the [c]ourt." *Zamora v. State*, 291 Ga. 512, 517-518 (7) (b) (731 SE2d 658) (2012) (citations and punctuation omitted). But the record shows that Neale never informed the trial court of his inability to hear the pretrial proceedings or requested

10

from the trial court any kind of relief to remedy that problem. Although at the October 3 hearing counsel referenced Neale's hearing impairment, it was in the context of ensuring that Neale had a working headset to hear the *trial testimony*. Similarly, at the October 6 hearing, counsel mentioned that the "there was an issue with regards to the headphones and his use of headphones," "[t]he bailiff . . . attempted to get the device that Dr. Neale is now currently wearing," "they were unable to find one that was in working order" and "he is entitled to wear that." At no time did Neale or his attorney inform the trial court that he could not hear the pretrial proceedings. So he waived any right to hear those proceedings. *Brewner v. State*, __ Ga. __, __ (II) (804 SE2d 94) (2017) (defendant waived right to be present when he "never voiced any disagreement during the . . . trial with either the trial court's decision or his counsel's conduct" regarding the trial court's dismissal outside of the defendant's presence of a juror, during a break in voir dire); *Burney v. State*, 299 Ga. 813, 820 (3) (b) (792 SE2d 354) (2016) (defendant's silence amounted to acquiescence and a waiver of his right to be present).

*Judgment affirmed. Branch and Bethel, JJ., concur.*