**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

June 20, 2023

# In the Court of Appeals of Georgia

A23A0500. KENDRICK v. THE STATE.

HODGES, Judge.

Following a jury trial, the Superior Court of Fulton County entered a judgment of conviction against Eric Kendrick on one count each of aggravated battery (OCGA § 16-5-24) and possession of a firearm by a convicted felon (OCGA §§ 16-11-131, 16-11-133).[1] Kendrick appeals from the denial of his motion for new trial as amended, arguing that the trial court violated his right under the Georgia Constitution

---

[1] The jury also returned guilty verdicts on additional counts of aggravated assault with a deadly weapon, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon; the trial court merged these charges into Kendrick's two remaining convictions. The jury did not reach a verdict on one count of participation in criminal street gang activity and acquitted Kendrick on one count of armed robbery.

to be present at all critical stages of his trial by sua sponte excusing a potential juror during a recess. Finding no error, we affirm.

"On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict and [the defendant] no longer enjoys a presumption of innocence." (Citation and punctuation omitted.) *Anderson v. State*, 352 Ga. App. 275, 277 (1) (834 SE2d 369) (2019). So viewed, the evidence adduced at trial revealed that Kendrick spotted Instagram footage of an early morning October 7, 2018 altercation between his cousin and the victim later that day. Based on an Instagram message inviting her to call a certain number, Kendrick's cousin called the number that same day and reached Kendrick, who asked her about the video. Shortly after their call ended, Kendrick's cousin called
Kendrick back and asked him not to do or say anything to the victim, who had left the scene.

That same afternoon, while the victim was at a friend's apartment, he received a telephone call from Christina Bailey, stating that she wanted to visit with him. The victim sent his location to her, and shortly thereafter, he received text messages that she had arrived at the apartment. When the victim went outside to greet Bailey, he saw Kendrick instead, who was standing across the street. Kendrick then bolted

2

toward the victim, pointing a gun at him, and then asked the victim why he had hit Kendrick's cousin. Kendrick ordered the victim to empty his pockets and, just before leaving, shouted "Mobb s***" and shot the victim in his back and left arm. Kendrick then fled from the scene. The victim identified Kendrick as his assailant from a photographic lineup, a search of Kendrick's person uncovered a "Mobb s***" tattoo, and telephone records placed Kendrick and the victim in the same vicinity at the time of the shooting.

A Fulton County grand jury indicted Kendrick for multiple crimes stemming from the shooting, and the trial court ultimately entered a judgment of conviction against Kendrick for one count each of aggravated battery and possession of a firearm by a convicted felon. The trial court denied Kendrick's motion for new trial as amended, and this appeal follows.

In a single enumeration of error, Kendrick contends that the trial court violated his right, under the Georgia Constitution, to be present at all critical stages of his trial when it dismissed a potential juror (Juror No. 11) sua sponte during a recess. We do not agree.

"It is well-established that a defendant has a constitutional right to be present at every stage of the proceedings materially affecting his case[.]" *Jackson v. State*,

278 Ga. 235, 237 (3) (599 SE2d 129) (2004); see also Ga. Const. of 1983, Art. I, Sec. I, Par. XII ("No person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state."). It is equally well-established that "proceedings at which the jury composition is selected or changed are critical stages at which the defendant is entitled to be present." (Citation and punctuation omitted.) *Zamora v. State*, 291 Ga. 512, 518 (7) (b) (731 SE2d 658) (2012). Voir dire is one such stage. See generally *Russell v. State*, 230 Ga. App. 546, 546-547 (1) (497 SE2d 36) (1998).

However, our Supreme Court has noted that, on similar occasions in which "the limited scope of the trial court's questions" involved meeting with potential jurors prior to voir dire to inquire about possible hardships, a defendant's right to be present at all critical stages of the proceedings is not infringed. *Robertson v. State*, 268 Ga. 772, 774 (4) (493 SE2d 697) (1997); see also *Neale v. State*, 344 Ga. App. 448, 452 (4) (a) (810 SE2d 621) (2018), cert. denied, No. S18C0820, 2018 Ga. LEXIS 520 (Ga. Aug. 2, 2018) (holding that "the right under the Georgia Constitution to be present does not extend to any and all communications between the trial courts and *potential* jurors") (citation and punctuation omitted; emphasis in original); *House v. State*, 237 Ga. App. 504, 507 (2) (c) (515 SE2d 652) (1999) (holding that preliminary

4

questioning of potential jurors by prosecuting attorney outside defendant's presence was not error). This is so because "the trial does not begin until the jury has been impaneled and sworn." (Citation and punctuation omitted.) *Neale*, 344 Ga. App. at 452 (4) (a).

In this case, the record indicates that, immediately after administering the voir dire oath, the trial court invited potential jurors to disclose any hardships which might affect their service as jurors. Fourteen jurors raised their numbered cards in response to the trial court's invitation. In Kendrick's presence, the trial court spoke individually with each of the potential jurors who expressed possible hardships, including a fifteenth juror who expressed a hardship during the trial court's questioning. Juror No. 11 was not among the group of jurors questioned by the trial court. Neither the State, Kendrick, nor his counsel participated in any manner during the trial court's preliminary questioning of potential jurors concerning hardships, and the trial court ultimately excused 14 of the 15 potential jurors for cause.[2] After the final potential juror who claimed a hardship stated that he had a pre-planned business trip out of state, the following transpired:

_____

[2] The trial court did not excuse Juror No. 25.

5

THE COURT: All right. I'll excuse you, sir. I will see you all at 1:30.

(Whereupon, a recess was taken.)

THE COURT: We are ready for the jury. Please get to the point and don't repeat each other. Let's go on the record. For cause is number 2, 8, 11 — you all didn't know about 11. She was too emotional to walk in the courtroom[.][3]

Neither Kendrick nor his counsel voiced an objection to the trial court's announcement. Morever, the trial court noted on two other occasions that Juror No. 11 would be excused for cause with no objection from Kendrick or his counsel. Finally, Kendrick's counsel confirmed that there were no exceptions to the manner

[3] Indeed, there is nothing in the record that confirms Juror No. 11 was even present in the courtroom at any time during voir dire. At the outset, Juror No. 11 was never identified in court during the trial court's initial discussion with potential jurors concerning hardships. It is therefore not surprising that the trial court noted that Juror No. 11 was "too emotional to walk in the courtroom[.]" Moreover, the trial court's "strike list" identified each of the potential jurors struck for cause. Juror No. 11 was shown as struck for cause, but is also the only juror with an asterisk appearing next to a juror's name; the record does not define the significance of the asterisk. Finally, with these facts in mind, Kendrick offered no testimony during the hearing on his motion for new trial that Juror No. 11 had been present during the initial stages of voir dire and was then absent.

of jury selection once the trial jury was empaneled and, specifically, that there were no exceptions with the strikes for cause.

We find no error. Here, the record confirms that the trial court conducted preliminary questioning of potential jurors to determine whether any would suffer a hardship arising from jury service. No questions were posed by Kendrick or the State during this process, and no individualized voir dire questioning to qualify trial jurors occurred. Compare *Neale*, 344 Ga. App. at 452 (4) (a) (finding no violation of defendant's right to be present where trial court asked only general hardship questions of potential jurors) and *Goodroe v. State*, 224 Ga. App. 378, 380 (1) (480 SE2d 378) (1997) (holding that defendant's right to be present was violated when trial court and prosecuting attorney began asking potential jurors substantive voir dire questions in defendant's absence). While voicing a strong preference to the contrary, both this Court and our Supreme Court have held that such questioning need not occur in the defendant's presence because the defendant's right to be present "does not does not extend to any and all communications between the trial courts and *potential* jurors."[4] *Neale*, 344 Ga. App. at 452 (4) (a); see also *Robertson*, 268 Ga. at

---

[4] We recognize that circumstances may arise during voir dire "in which the right to a public trial . . .may give way in certain cases to other rights or interests[.]" (Citation and punctuation omitted.) *Johnson v. State*, 293 Ga. 641, 643 (3) (748 SE2d

7

774 (4). Therefore, we conclude that the trial court's preliminary questioning of potential jurors to gather information about hardships that could affect their ability to serve as trial jurors, including any such ex parte questioning of Juror No. 11, did not violate Kendrick's right to be present at every critical stage of his trial.[5] See *Robertson*, 268 Ga. App. at 774 (4); *Neale*, 344 Ga. App. at 452 (4) (a).[6]

896) (2013). But absent such circumstances, which should be made clear on the record, we do not condone questioning potential jurors outside the defendant's presence. See *Neale*, 344 Ga. App. at 452 (4) (a); see also *Robertson*, 268 Ga. at 774 (4) ("All voir dire should take place in the courtroom in the presence of all parties.").

[5] As a result, we need not consider Hendrick's argument that he did not acquiesce to the trial court's dismissal of Juror No. 11. See *Murphy v. State*, 299 Ga. 238, 241 (2) (787 SE2d 721) (2016) ("Acquiescence may occur when counsel makes no objection and a defendant remains silent after he or she is made aware of the proceedings occurring in his or her absence."); *Jackson*, 278 Ga. at 237 (3) ("the right to be present may be waived if the defendant later acquiesces in the proceedings occurring in his absence") (citation and punctuation omitted); see also *Adams v. State*, 316 Ga. App. 1, 6 (2) (728 SE2d 260) (2012) (holding defendant acquiesced where "the record shows that shortly after excusing the juror, the trial court explained its ex parte decision to both [defendant] and his counsel, and neither objected"); *Braley v. State*, 276 Ga. 47, 51-52 (17) (572 SE2d 583) (2002) (holding that defendant waived right to complain that trial court excused potential juror for cause sua sponte "[b]y failing to object at trial"). Therefore, it is not relevant to our disposition of this case that Kendrick may have "mentioned" some confusion to his trial counsel, who then failed to object or otherwise take any action.

[6] The cases upon which Kendrick relies are inapposite, inasmuch as they involve violations of a defendant's right to be present after preliminary jury questioning or the jury has been impaneled, i.e., bench conferences during individualized voir dire or when striking the trial jury, communications with jurors

*Judgment affirmed. Miller, P. J., and Mercier, J., concur.*

---

during trial, communications with jurors during deliberations, and the like. See, e.g., *Dunn v. State*, 308 Ga. App. 103, 104-108 (1) (a) (706 SE2d 596) (2011) (finding that defendant's right to be present was violated when trial court sua sponte released trial juror during a recess); *Zamora*, 291 Ga. at 518 (7) (b) (finding violation of defendant's right to be present during bench conferences that led to dismissal of trial juror); *Sammons v. State*, 279 Ga. 386, 387-388 (2) (612 SE2d 785) (2005) (reversing convictions due to trial court's ex parte conversation with trial juror in chambers following the close of evidence); *Pennie v. State*, 271 Ga. 419, 420-423 (2) (520 SE2d 448) (1999) (reversing conviction where defendant was not present for in-chambers conversation with trial juror after the close of evidence); compare *Robertson*, 268 Ga. at 774 (4); *Neale*, 344 Ga. App. at 452 (4) (a).

9